■ CARLOS J. THOMAS et al., Appellants, v ROBERT FLAVIN, as President, Communications Workers of America, Local 1170, Respondent.—Order unanimously affirmed, without costs. Memorandum: Plaintiff seeks to recover damages for injury to his name and reputation caused by a flyer circulated by defendant, who is president of Local 1170, Communications

Workers of America, of which plaintiff is a member. The flyer was circulated during the course of a strike against Rochester Telephone Company in which plaintiff refused to participate and during which he worked for the company. A portion of that flyer characterized plaintiff as a "scab" and set forth a definition of "scab" which has been attributed to the writer Jack London and is well-known in trade union literature. On cross motions for summary judgment, Special Term granted partial summary judgment on behalf of defendant, holding that the word "scab" and the definition in the flyer are not libelous and not actionable as a matter of law. State libel actions for statements issued during the course of, and arising out of, labor disputes have been pre-empted by Federal law. *(Linn v Plant Guard Workers,* 383 US 53.) The only instances in which State remedies are available are those in which the statements are circulated with knowledge of their falsity or with reckless disregard of whether they are true or false. *(Linn, supra,* p 65.) The Supreme Court has addressed itself directly to the language complained of here and has found that it falls within the ambit of Federally protected speech. In *Letter Carriers v Austin* (418 US 264), the court considered the use of the epithet "scab" and the Jack London definition involved here. It held that the word "scab" was protected under Federal law and that it could not be the basis of a State libel judgment. There, as here, the use of that term, while insulting and abusive, and intended to be so, was factually accurate. One definition of "scab" is "a member of a union who refuses to strike or returns to work before a strike has ended". (Webster's Third New International Dictionary). Plaintiff here admittedly is a union member who worked during the course of his union's strike and therefore falls within that definition and also within the holding of *Austin.* Referring to *Linn (supra),* the court in *Austin (supra,* p 283) stated: "[T]he court observed that use of this particular epithet is common parlance in labor disputes and has specifically been held to be entitled to the protection of § 7 of the NLRA." Going on to discuss the Jack London rhetoric, the court said: "Such words were obviously used here in a loose, figurative sense to demonstrate the union's strong disagreement with the views of those workers who oppose unionization. Expression of such an opinion, even in the most pejorative terms, is protected under federal labor law." *(Austin, supra,* p 284.) Plaintiff seeks to avoid the force of Federal law by arguing that the flyer complained of was not circulated as the result of a labor dispute. In replying to that argument in *Austin (supra,* p 279), the court said: "[W]hether Linn's partial pre-emption of state libel remedies is applicable obviously cannot depend on some abstract notion of what constitutes a 'labor dispute'; rather, application * * * must turn on whether the defamatory publication is made in a context where the policies of the federal labor laws leading to protection for freedom of speech are significantly implicated." We find the statement here to have been issued within that context and that Federal law is therefore controlling. Additionally, the flyer here, of which 1,500 were printed for circulation to the union membership of 1,483, enjoys the qualified privilege which attaches to communications among members of labor unions. *(DeCarlo v Catalfano,* 42 AD2d 823; *Garriga v Townsend,* 285 AD 199.) Plaintiff's motion for summary judgment was properly denied. The question of whether the other defamatory statements in the flyer were published with knowledge of their falsity or with reckless disregard of whether they are true or false presents a triable issue of fact. (Appeal from order of Monroe Supreme Court—summary judgment.) Present—Simons, J. P., Dillon, Hancock, Denman and Goldman, JJ.