■ CHARLES J. MONTANA, Appellant, v ROBERT SMITH et al., Respondents. — Order entered October 15, 1981 reversed, on the law and facts, with costs, defendants' motion denied and verdict reinstated; appeal from order entered March 2, 1982 dismissed as moot. Memorandum: In this slander action plaintiff appeals from an order of Supreme Court, Erie County, which set aside a jury verdict and directed that judgment be entered in favor of defendants as a matter of law. The alleged slanderous statements were made by the defendants, officials of the Teamsters' union, during a labor dispute involving Van Dyke Taxi, which is owned and operated by plaintiff. The statements were reported in two issues of *The Spectrum,* a student newspaper at State University of New York in Buffalo. The defendant William Hoffman allegedly said in an interview with a student reporter that Van Dyke is "a Mafia operation with Mafia money" and that "Mr. Montana 'Lives with all the favorite sons of the Mafia' ". The defendant Robert Smith reportedly stated at a union meeting that the home of the "man who allegedly owns [Van Dyke]" was raided by Federal agents and "16 or 17 men" arrested were there for gambling, and that Van Dyke is controlled by gambling interests. The trial court set aside the verdict on the ground that plaintiff failed to establish with convincing clarity that the statements were made with knowledge of their falsity or with reckless disregard for their truth (see CPLR 4404, subd [a]). It is clear that a defamatory statement made during the course of a labor dispute is actionable only if circulated with actual malice, i.e., "with knowledge of its falsity, or with reckless disregard of whether it was true or false" (*Linn v Plant Guard Workers,* 383 US 53, 61). The plaintiff has the burden of showing actual malice with "convincing clarity" (see *New York Times Co. v Sullivan,* 376 US 254, 285-286). Here, the record establishes that plaintiff's cousin Charles A. Montana had been linked with organized crime and that his cousin's home had been the object of a police gambling raid. Hoffman, by his own admissions, knew this and knew that plaintiff and not plaintiff's cousin controlled Van Dyke. There is also proof that Smith has known plaintiff since 1949; that in 1969 Smith, at a public hearing imposed an application for taxicab licenses made by another company owned by plaintiff and testified regarding plaintiff's qualifications to obtain the licenses; and that Smith, as executive officer of the union local, was ultimately responsible for the handling of the strike and had regular discussions with Hoffman regarding it. Smith's repeated denials of knowing plaintiff and of knowledge of plaintiff's status as the owner of Van Dyke, in light of this proof, are unconvincing and seriously damage his credibility. Furthermore, Smith admitted that he had met plaintiff's cousin on two occasions, and he gave testimony from which it could be inferred that he knew that plaintiff's cousin, and not plaintiff, had been the subject of police investigation. In returning its verdict the jury necessarily rejected defendants' claim that they did not make the statements and that, in any event the statements did not concern plaintiff. Ample proof was submitted from which the jury could conclude that the defendants knew that any charge of Mafia or gambling involvement concerned only plaintiff's cousin and could not be truthfully leveled at plaintiff. That the defendants must have had "serious doubts" about the truth of their statements when applied to plaintiff (see *St. Amant v Thompson,* 390 US 727, 731) or that they possessed a high degree of awareness of their probable falsity (see *Gertz v Robert Welch, Inc.,* 418 US 323, 332) is obvious from an examination of the record. The setting aside of this verdict, therefore, cannot be justified because there is a fair interpretation of the evidence to support the jury's conclusion (see *Aiello v Garahan,* 91 AD2d 839). All concur, except Callahan, J., who dissents and votes to affirm, in the following memorandum.

Callahan, J. (dissenting). I do not concur in the findings or conclusions reached by the majority. Neither knowledge of falsity nor reckless disregard of whether or not the statements were false has been shown with the "convincing clarity which the constitutional standard demands", and thus a judgment based on such evidence should not be permitted to stand (*New York Times Co. v Sullivan*, 376 US 254, 285-286). It is for the Judge in the first instance to decide whether that standard has been met (cf. *Rosenblatt v Baer*, 383 US 75, 88; *Pauling v National Review*, 49 Misc 2d 975, 983, affd 27 AD2d 903, affd 22 NY2d 818). When a verdict is incorrect as a matter of law, a trial court may properly enter a judgment notwithstanding the verdict pursuant to CPLR 4404 (subd [a]). It is recognized that labor disputes "are frequently characterized by bitter and extreme charges, countercharges, unfounded rumors, vituperations, personal accusations, misrepresentations and distortions. Both labor and management often speak bluntly and recklessly, embellishing their respective positions with imprecatory language" (*Linn v Plant Guard Workers*, 383 US 53, 58). Such expressions made during a labor dispute, even in the most pejorative terms, are protected under Federal law (*Thomas v Flavin*, 58 AD2d 1031, 1032). For this reason, plaintiff has a heavy burden and must prove that the defamatory statements, which were concededly made during a labor dispute, were circulated with actual malice (see *Linn v Plant Guard Workers, supra*, p 61; *Eden Park Health Servs. v Ottley*, 87 AD2d 967). Mere falsity is not sufficient (see *Kadish v Dressner*, 86 AD2d 622, 623). For these and other reasons stated in the memorandum decision of Supreme Court, Erie County, Joslin, J., I vote to affirm. (Appeal from order of Supreme Court, Erie County, Joslin, J. — set aside verdict.) Present — Hancock, Jr., J. P., Callahan, Doerr, Boomer and Schnepp, JJ.