■ Louise Steinhilber, Respondent, v John M. Alphonse, as President of the Communications Workers of America, Local 1120, et al., Appellants.—Kane, J. Appeal from that part of an order of the Supreme Court at Special Term (Torraca, J.), entered March 7, 1985 in Ulster County, which partially denied defendants' motion to dismiss the complaint.

Beginning August 7, 1983, the Communications Workers of America, Local 1120 (the union), was engaged in a strike against New York Telephone Company, plaintiff's employer. Plaintiff, a member of the union until she resigned on August 11, 1983, worked during the strike. On that date, defendant Edwin J. Schatzel allegedly displayed a banner for public viewing at the company's Kingston office which read "#1 Scab Louise Steinhilber Sucks". In January 1984, the union fined plaintiff for her continued work during an organized strike.

The union apparently maintains a telephone line whereby union members can call and receive taped messages containing information and news about the union. On April 25, 1984, a message apparently recorded by defendant Richard Martini

was allegedly played over the telephone line. The text of the message was as follows: "Wednesday, April 25th. It is with amazement I report to you the good membership of this union that Louise the scab Steinhilber has been named secretary of the week by a local radio station. Even further beyond comprehension is the fact that a union member, Barbara Van Etten, is the one who called the radio station to suggest Louise the scab be considered for what should be an honorable position. In Barbara's case, brains aren't everything. In fact, in her case, they are nothing. She has a soft heart and a head to match. Louise the scab, years ago she was an unknown failure. Now she is a known failure. She lacks only three things to get ahead, talent, ambition, and initiative. But she has friends. In fact, if you have her for a friend, you don't need any enemies. In times of trouble, she is waiting to catch you * * * bent over at the right angle. At least, she looks like a million, every year of it. Her boyfriend drinks ten cups of coffee a day to steady his nerves, just so he can look at her face. When she comes into a room, the mice jump up on chairs. But she could be a perfect model, for a shipbuilder. If she ever gets into an elevator, if she could fit in it, it better be going down. And, in case I haven't made my point, 1986 is closing in upon all of us. Let's choose our friends by their deeds. Only in solidarity can we expect to be successful. For the Communications Workers of America, Local 1120, this is Rich Martini." Plaintiff has alleged that this message and the banner displayed on August 11, 1983 defamed her, and she instituted this action against defendants Schatzel and Martini as well as defendant John M. Alphonse, president of the union. Defendants moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action. Special Term dismissed the action with respect to defendant Alphonse and dismissed one cause of action against each of the remaining defendants. However, Special Term denied the motion insofar as it sought to dismiss the remaining causes of action. This appeal by defendants ensued.

Initially, defendants assert that plaintiff's complaint fails to state a cause of action because the statements of which plaintiff complains were made in the context of a labor dispute, and therefore may not be the subject of a defamation action. In this regard, it is established that if the challenged statements were made in the context of a labor dispute, a plaintiff must comply with the standard enunciated in *New York Times Co. v Sullivan* (376 US 254, 279-280), i.e., the statement made in the context of a labor dispute must have

been made with *actual malice* in order to pursue an action such as this *(Letter Carriers v Austin,* 418 US 264, 281; *Wolf St. Supermarkets v McPartland,* 108 AD2d 25; *Thomas v Flavin,* 58 AD2d 1031). Whether a statement arises in the context of a labor dispute depends upon "whether the defamatory publication is made in a context where the policies of the federal labor laws leading to protection for freedom of speech are significantly implicated"*(Letter Carriers v Austin, supra,* p 279).

We turn first to a consideration of whether the statements were made in the context of a labor dispute. Since the banner was part of a union-organized picket line, it clearly was displayed in the context of a labor dispute *(see, Thomas v Flavin, supra).* Turning to the taped telephone message, we reach a contrary conclusion. The taped statement was made eight months after the strike was settled and more than two years before the contract under which the union was operating was to expire. Consequently, plaintiff must show actual malice on defendant Schatzel's part only regarding his participation in the banner incident of August 11, 1983. In this regard, we find that plaintiff's allegations are sufficient to allege actual malice against defendant Schatzel. Assuming, arguendo, that the taped message arose in the context of a labor dispute, we would also find plaintiff's allegations regarding that incident sufficient to allege actual malice.

Defendants next contend that, even if Federal law does not preempt this action, the statements are nevertheless privileged as communications among union members on matters of common interest or concern. This contention must be rejected, as we are unable to conclude that the subject statements were made in good faith to persons having a corresponding interest and were expressed in a reasonable manner for a proper purpose *(see,* 44 NY Jur 2d, Defamation and Privacy, § 73, at 37). Moreover, the above privilege is not an absolute privilege, but a qualified privilege. Accordingly, since plaintiff has sufficiently alleged actual malice, we could not dismiss even if we were to find the statements to be protected by the qualified privilege *(see, De Carlo v Catalfano,* 42 AD2d 823, *affd* 34 NY2d 703).

Defendants further argue that, as a matter of law, the statements made were expressions of opinion incapable of being proven false, and therefore cannot be the subject of a defamation action *(see, Ollman v Evans,* 750 F2d 970, *cert denied* — US —, 105 S Ct 2662; *Curtis Pub. Co. v Birdsong,* 360 F2d 344, 348; *Rinaldi v Holt, Rinehart & Winston,* 42

NY2d 369, 380, *cert denied* 434 US 969; *Rand v New York Times Co.,* 75 AD2d 417, 422). We are constrained to agree with defendants' contention.

The only fact asserted in the banner was that plaintiff was a scab, and in the context of this case, the use of that term is not actionable *(Letter Carriers v Austin, supra,* pp 278, 283). Furthermore, we are forced by judicial precedent to conclude that the term "sucks", as used here, falls under the category of opinion. To be sure, the term "sucks" can refer to an act of deviate sexual intercourse and, if used in that sense, would be actionable. However, the term is frequently used in some quarters as an expression of disapproval, and the context in which the statement was made here demonstrates that defendants intended this latter interpretation *(see, Ollman v Evans, supra; Curtis Pub. Co. v Birdsong, supra,* p 348; Restatement [Second] of Torts § 566 comment c [1977]; *cf. Rand v New York Times Co., supra).* Turning to the recorded telephone message, we reach a similar conclusion since the average person hearing this message would have been put on notice that he or she was hearing opinion *(see, Ollman v Evans, supra,* p 982; *Curtis Pub. Co. v Birdsong, supra;* Restatement [Second] of Torts § 566 [1977]). Although not actionable, we note, however, as did the court in *Curtis Pub. Co. v Birdsong (supra,* p 348), that words of ridicule, vituperation and abuse, such as found in this case, reflect on the character of the user rather than on that of the person to whom they are intended to refer.

Having reached the above conclusion, we need not reach defendants' remaining contentions. Defendants' motion must therefore be granted in its entirety and the complaint dismissed.

Order modified, on the law, without costs, by reversing so much thereof as partially denied defendants' motion; motion granted in its entirety and complaint dismissed; and, as so modified, affirmed. Kane, Casey and Weiss, JJ., concur.

Mahoney, P. J., and Levine, J., dissent and vote to affirm in the following memorandum by Mahoney, P. J. Mahoney, P. J. (dissenting). In our view, the taped message involved in this case contained statements actionable in a defamation action. In general, statements of opinion, as opposed to statements of fact, are not actionable in a defamation action. This distinction takes on even greater significance in light of the constitutional protection given to statements of opinion *(see, Gertz v Robert Welch, Inc.,* 418 US 323). However, the common law distinguished between a pure expression of opinion, where the maker of the comment states the facts upon which the opinion

is based or where the parties to the communication know or are assumed to know such facts, and a mixed expression of opinion, where the opinion in form or context is apparently based on undisclosed facts (Restatement [Second] of Torts § 566 comment b, pp 171-173 [1977]). Opinions of the pure type are not actionable, while opinions of the mixed type are actionable *(Rand v New York Times Co.,* 75 AD2d 417, 422). Further, opinions of the mixed type are not accorded constitutional protection *(see, Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 380, *cert denied* 434 US 969). In the instant case, the taped message states, "[Plaintiff] lacks only three things to get ahead, talent, ambition, and initiative." The message does not state the basis for this opinion, nor can it be assumed that all potential listeners were aware of any factual basis for this opinion. Therefore, taken in the context of the entire message, this is the sort of mixed opinion which is actionable.

Further, the failure of plaintiff to allege special damages is not fatal to her action. A slander cause of action must be supported by an allegation of special damages unless the defamation falls into one of the four narrow categories of slander per se *(Matherson v Marchello,* 100 AD2d 233, 236). Libel, on the other hand, does not require an allegation of special damages if the defamatory statement " 'tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society' " *(Rinaldi v Holt, Rinehart & Winston, supra,* p 379, quoting *Sydney v Macfadden Newspaper Pub. Corp.,* 242 NY 208, 211-212). The Second Department has held that a radio broadcast should be treated as libel rather than slander *(Matherson v Marchello, supra,* p 239). In our view, its rationale is sound and should be followed, and we see no reason to distinguish a taped phone message intended for a large audience from a radio broadcast. In the context of the entire taped message in the instant case, the defamatory expression would tend to expose plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of her in the minds of right-thinking persons. Thus, the allegation of special damages was not necessary.