OPINION OF THE COURT
Hancock, Jr., J.
 It is a settled rule that expressions of an opinion "false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions” (Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 380, cert denied 434 US 969). The question here is whether the Appellate Division has properly applied this rule in dismissing plaintiff’s defamation action under CPLR 3211 (a) (7) upon the ground that the two allegedly defamatory communications, complained of in separate causes of action, are pure opinions and, as such, not actionable as a matter of law.
I
The essential facts appear from plaintiff’s complaint and her supplementary affidavit. Plaintiff was a member of defendant Communications Workers of America, Local 1120, and employed at New York Telephone Company in Saugerties, New *287 York. On August 7, 1983 the union declared a strike. Plaintiff continued to work and did so as a union member in violation of the strike order and union rules until August 11, 1983 when she resigned from the union. In January 1984 the union assessed a fine against her for working during the strike, and, in March of that year, the membership authorized the officers of the union to take necessary steps to collect the fine which she had not paid.
The communication giving rise to plaintiffs first cause of action was a tape-recorded telephone message made by defendant Martini, vice-president of Local 1120, which played automatically on April 25, 1984 to anyone dialing the private telephone number provided to union members. (The union maintained a telephone answering and information service for its members.) The recorded message stated: "Wednesday, April 25th It is with amazement I report to you, the good membership of this union that Louise the scab Steinhilber has been named secretary of the week by a local radio station. Even further beyond comprehension is the fact that a union member, Barbara Van Etten, is the one who called the radio station to suggest Louise the scab be considered for what should be an honorable position. In Barbara’s case, brains aren’t everything. In fact, in her case they are nothing. She has a soft heart and a head to match. Louise the scab, years ago, she was an unknown failure. Now she is a known failure. She lacks only three things to get ahead, talent, ambition, and initiative. But she has friends. In fact, if you have her for a friend, you don’t need any enemies. In times of trouble, she is waiting to catch you * * * bent over at the right angle. At least, she looks like a million, every year of it. Her boyfriend drinks ten cups of coffee a day to steady his nerves, just so he can look at her face. When she comes into a room, the mice jump up on chairs. But she could be a perfect model, for a shipbuilder. If she ever gets into an elevator, if she could fit in it, it better be going down. And, in case I haven’t made my point, 1986 is closing in upon all of us. Let’s choose our friends by their deeds. Only in solidarity can we expect to be successful. For the Communication Workers of America, Local 1120, this is Rick Martini.”
Plaintiff bases her second cause of action on a banner displayed on August 11, 1983 — during picketing activity — on the pickup truck of defendant Schatzel, the area representative of Local 1120. The words on the banner, which plaintiff concedes "formed a part of the [union] protests,” were:
*288 "#1 SCAB LOUISE STEINHILBER SUCKS”.
Defendants moved to dismiss both causes of action on two grounds: (1) that because the communications grew out of a labor dispute and were entitled to the protection afforded by section 7 of the National Labor Relations Act (29 USC § 158 [c]), the allegations of malice and of actual damage in the complaint were insufficient and the complaint was subject to dismissal under the rules established in Letter Carriers v Austin (418 US 264) and Linn v Plant Guard Workers (383 US 53); and (2) that, in any event, the communications were statements of pure opinion, not statements of fact or of mixed fact and opinion, and, as such, not actionable. Because it was not alleged that defendant Schatzel was connected in any way with the taped message or that defendant Martini had had anything to do with the display of the banner, Special Term dismissed the first cause of action as to Schatzel and the second as to Martini. In all other respects, it denied the motion.
The majority at the Appellate Division held that the banner, but not the taped message, was a communication made "in the context of a labor dispute” (115 AD2d 844, 845). It did not, however, reach the question of the adequacy of the complaint under Letter Carriers v Austin (supra) and Linn v Plant Guard Workers (supra), because it concluded that both communications were statements of pure opinion and that the complaint should, for that reason, be dismissed. The Appellate Division, therefore, modified the order and granted the motion dismissing the complaint in its entirety. The dissenters at the Appellate Division would have denied the motion as to the first cause of action holding that the statement in the taped recorded message — "she lacks only three things to get ahead, talent, ambition, and initiative” — was an expression of mixed fact and opinion which, as distinguished from a statement of pure opinion, is actionable (115 AD2d 844, 847-848).
For reasons which will appear, we agree with the majority at the Appellate Division that both statements in issue were expressions of pure opinion. The order dismissing the complaint should, therefore, be affirmed. We find it unnecessary to reach defendant’s contentions that the statements arose out of a labor dispute and that the complaint does not contain the allegations of malice and actual damages required by Letter Carriers and Linn.
*289 II
In addressing the decisive question, whether the statements are opinions and thus privileged, we observe that in framing the issue both parties have assumed the applicability of Gertz v Robert Welch, Inc. (418 US 323).[1] Under Gertz, if the statements are held to be expressions of opinion, they are entitled to the absolute protection of the First Amendment by virtue of the Supreme Court’s categorical statement that: "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas” (418 US, at pp 339-340, supra).[2]
The rule to be applied may be simply stated. An expression of pure opinion is not actionable. It receives the Federal constitutional protection accorded to the expression of ideas, no matter how vituperative or unreasonable it may be (see, Rinaldi v Holt, Rinehart & Winston, supra, at p 380; Gertz v Robert Welch, Inc., supra, at pp 339-349). A "pure opinion” is a statement of opinion which is accompanied by a recitation of the facts upon which it is based. An opinion not accompanied by such a factual recitation may, nevertheless, be "pure opinion” if it does not imply that it is based upon undisclosed facts (see, Ollman v Evans, 750 F2d 970, 976 [DC Cir], cert denied 471 US 1127; Buckley v Littell, 539 F2d 882, 893 [2d Cir], cert denied 429 US 1062; Restatement [Second] of Torts § 566 comment c). When, however, the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a "mixed opinion” and is actionable (see, Hotchner v CastilloPuche, 551 F2d 910, 913 [2d Cir], cert denied sub nom. Hotchner v Doubleday & Co., 434 US 834; cf. Cianci v New Times *290 Pub. Co., 639 F2d 54, 64, 65 [2d Cir]).[3] The actionable element of a "mixed opinion” is not the false opinion itself — it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking. (Rand v New York Times Co., 75 AD2d 417, 422; cf. Silsdorf v Levine, 59 NY2d 8, 14, where the complaint alleged not only that the opinion was defamatory but that the accompanying recitation of facts upon which it was based was either a "gross distortion” or "misrepresentation of fact”.)
While it is clear that expressions of opinion receive absolute constitutional protection under Gertz, determining whether a given statement expresses fact or opinion may be difficult. The question is one of law for the court and one which must be answered on the basis of what the average person hearing or reading the communication would take it to mean (see, Rinaldi v Holt, Rinehart & Winston, supra, at p 381; Mr. Chow of N. Y. v Ste. Jour Azur S.A., 759 F2d 219, 227-228). There is no definitive test or set of criteria (see, Mr. Chow of N. Y. v Ste. Jour Azur S.A., supra, at pp 225-226). The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion (see, Restatement [Second] of Torts § 566 comment c).
While the Supreme Court in Gertz did not focus on the distinction between fact and opinion, the court, in a case decided on the same day as Gertz, Letter Carriers v Austin (418 US 264, supra), has provided a helpful precedent. In Letter Carriers, involving a newsletter sent out during a labor dispute, the question involved libel judgments based on references to plaintiffs as "scabs” followed by a quoted description of a "scab” as "a traitor to his God, his country, his family and his class” attributed to author Jack London.[4] In reversing *291 the judgments and holding that the "scab” description was absolutely protected under the National Labor Relations Act, the court considered both the context of the entire communication and the type of "intemperate, abusive, or insulting language” (id,., at p 283) that would commonly be employed in the particular social setting of a labor dispute. It concluded that no reader of the newsletter would have understood the union "to be charging the appellees with committing the criminal offense of treason” and that London’s words were "merely rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members towards those who refuse to join” (id., at pp 285, 286). (See also, Greenbelt Pub. Assn. v Bresler, 398 US 6, 14, relied on in Letter Carriers v Austin, supra, where the court weighed the broader social context in considering news reports of statements made at a public zoning meeting characterizing plaintiff’s negotiating position as "blackmail” and concluded that "even the most careless reader must have perceived that the word ['blackmail’] was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [plaintiff’s] negotiating position extremely unreasonable”.)
We eschew any attempt here to reduce the problem of distinguishing fact from opinion to a rigid set of criteria which can be universally applied. The infinite variety of meanings conveyed by words — depending on the words themselves and their purpose, the circumstances surrounding their use, and the manner, tone and style with which they are used — rules out, in our view, a formulistic approach. A court must have the flexibility to consider the relevant factors and to accord *292 each the degree of importance which the specific circumstances warrant. It should be noted, however, that in adopting various approaches to separating fact from opinion, some courts have emphasized specific criteria and set forth general guidelines. (See, e.g., Mr. Chow of N. Y. v Ste. Jour Azur S.A., 759 F2d 219, 225-226 [2d Cir], supra, adopting and applying analysis set forth in plurality opn in en banc decision in Ollman v Evans, 750 F2d 970, cert denied 471 US 1127, supra; Ollman v Evans, supra, at pp 977-984, majority opn, Starr, J., positing a four-factor analysis [discussed infra]; but see, Oilman, concurring opn, Bork, J., at pp 993-1010, rejecting any "mechanistic rule” based on the semantic nature of the assertion in favor of a determination on "totality of the circumstances”; and see also, Oilman, concurring opn MacKinnon, J., at p 1016, and Oilman, dissenting in part opn, Robinson, Ch. J., at pp 1021-1028; Information Control Corp. v Genesis One Computer Corp., 611 F2d 781 [9th Cir], adopting a multifactor, totality of circumstances test; Hotchner v Castillo-Puche, 551 F2d 910, 913 [2d Cir], cert denied sub nom. Hotchner v Doubleday & Co., 434 US 834, supra, emphasizing the verifiability vel non of the statement in issue; Buckley v Littell, 539 F2d 882, 895 [2d Cir], cert denied 429 US 1062, supra, concentrating on the context of the statement and whether the concept conveyed was "loosely definable”, and "variously interpretable”.)
While none of the opinions in the Federal cases cited above purports to devise a universal test, several discuss general criteria. One, which contains a helpful discussion, is Judge Starr’s plurality opinion in Ollman v Evans (supra), setting out four factors which should generally be considered in differentiating between fact and opinion. The four factors are: (1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might "signal to readers or listeners that what is being read or heard is likely to be opinion, not fact” (Ollman v Evans, supra, at p 983; see, discussion of four factors, id., at pp 978-984).
*293 Ill
In analyzing whether the statements that plaintiff lacked "talent, ambition, and initiative” would be understood by the average listener as pure opinion or as implying that the speaker had an undisclosed basis for the statements, as plaintiff contends, we first examine the content of the whole communication as well as its tone and its apparent purpose. Like Jack London’s description of a "scab” (n 2, supra) it is evident that the tape-recorded message was intended to be invective expressed in the form of heavy-handed and nonsensical humor. In what could be viewed as a clumsy effort to imitate London, the message strives in a juvenile way to achieve humor in, for example, the comments that plaintiff "looks like a million, every year of it”, that her "boyfriend drinks ten cups of coffee a day to steady his nerves, just so he can look at her face”, and that when plaintiff "comes into a room, the mice jump up on chairs.” The sentence which plaintiff selects from the message and claims is "factually laden” — impugning her as lacking in "talent, ambition, and initiative”[5] 6 — is preceded and followed by statements which are clearly part of the attempt at humor prevailing throughout: "In Barbara’s case, brains aren’t everything. In fact, in her case they are nothing. She has a soft heart and a head to match. Louise the scab, years ago, she was an unknown failure. Now she is a known failure. She lacks only three things to get ahead, talent, ambition, and initiative. But she has friends. In fact, if you have her for a friend, you don’t need any enemies. In times of trouble, she is waiting to catch you * * * bent over at the right angle” (emphasis added). We conclude, contrary to the view expressed in the dissent at the Appellate Division, that the statement’s verbal context would clearly suggest to the ordinary person listening to the message that the comment concerning plaintiff’s lack of "talent, ambition, and initiative”, like the rest of the message, was not intended to be understood as an assertion of fact or as opinion based on undisclosed facts.
*294 Consideration of the circumstances and of the broader social context (i.e., the factual background leading to the preparation of the tape recording for the union members possessing the special number of the information line) confirms the conclusion that the recorded message would be taken by the ordinary person not literally, but figuratively. As noted, we do not reach defendants’ contention that the taped message was protected speech under the National Labor Relations Act. But it by no means follows that we may not, for the purpose of distinguishing fact from opinion, consider the most significant circumstance of the broader social context: that the message was prepared and played as part of the union’s effort to punish a former member. Plaintiff concededly was a "scab” during the strike. For defiance of the strike order, the union assessed a fine against her which she did not pay. In the emotional aftermath of a strike when animosity would be expected to persist — particularly against a former member who was seen as a "traitor” to the cause — it is not surprising that union officials would speak of plaintiff to the membership in highly unflattering terms. As observed by the Supreme Court in Letter Carriers: "such exaggerated rhetoric [as applying the word 'traitor’ to an employee who crossed the picket line] [is] commonplace in labor disputes” (418 US 264, 286, supra). An analysis of the statement that plaintiff lacks "talent, ambition, and initiative” in the light of the third and fourth Oilman factors (the full verbal context of the statement and its broader social context) thus compels the conclusion that the statement would be taken as pure opinion.
To be sure, in another context, a flat statement that a person lacks talent or ambition or initiative might be viewed as a factual assertion, if considered under the first and second Oilman factors: whether the statement is sufficiently specific to convey "a precise core of meaning for which a consensus of understanding exists” (Ollman v Evans, supra, at p 979) and whether it is "capable of being objectively characterized as true or false” (Ollman v Evans, supra, at p 979). But, "even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole’ ” (Information Control Corp. v Genesis One Computer Corp., 611 F2d 781, 784 [9th Cir], supra). Here, the inescapable conclusion from the verbal context of the entire message and all of the circumstances under which it *295 was delivered is that the statement would be understood by the ordinary listener for what it is: a tasteless effort to lampoon plaintiff for her activities as a "scab”, conduct which to the union was an unpardonable transgression.
What we have said applies with even greater force to plaintiff’s second cause of action based on the scurrilous banner displayed as part of the picketing activity during the strike. The majority at the Appellate Division held that the banner, in "the context in which the statement was made”, was intended as "an expression of disapproval” and that it was, as such, an opinion and not actionable (115 AD2d 844, 847). We agree with these conclusions and observe that the dissenters at the Appellate Division have not taken issue with them.
The order of the Appellate Division should, therefore, be affirmed, with costs.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Titone concur.
Order affirmed, with costs.

. Accordingly, we do not consider whether the statements in issue could he viewed as speech about a private person by nonmedia defendants concerning matters which arguably were not of public concern and, thus, not constitutionally protected under Gertz v Robert Welch, Inc. (418 US 323) (see, Philadelphia Newspapers v Hepps, 475 US —, 106 S Ct 1558, 1562-1564; Dun & Bradstreet v Greenmoss Bldrs., 472 US 749, 757-762) or whether the statements could be actionable absent such constitutional protection (see, Restatement [Second] of Torts § 566 comment c, at 173).

. Although the statement is dictum, it has been interpreted by a majority of Federal courts and our court (see, Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 380) as a statement of controlling law that an expression of an opinion is absolutely protected (see, Oilman v Evans, 750 F2d 970, 974, n 6; but see, Oilman, concurring opn Bork, J., id., at pp 998, 999).

. The rule as set forth in the Restatement (Second) of Torts § 566 is as follows: "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.”

. London’s full description follows:
"The Scab
"After God had finished the rattlesnake, the toad, and the vampire, He had some awful substance left with which He made a scab.
*291 "A scab is a two-legged animal with a corkscrew soul, a water brain, a combination backbone of jelly and glue. Where others have hearts, he carries a tumor of rotten principles.
"When a scab comes down the street, men turn their backs and Angels weep in Heaven, and the Devil shuts the gates of hell to keep him out.
"No man (or woman) has a right to scab so long as there is a pool of water to drown his carcass in, or a rope long enough to hang his body with. Judas was a gentleman compared with a scab. For betraying his Master, he had character enough to hang himself. A scab has not.
"Esau sold his birthright for a mess of pottage. Judas sold his Savior for thirty pieces of silver. Benedict Arnold sold his country for a promise of a commission in the British Army. The scab sells his birthright, country, his wife, his children and his fellowmen for an unfulfilled promise from his employer.
"Esau was a traitor to himself; Judas was a traitor to his God; Benedict Arnold was a traitor to his country; a SCAB is a traitor to his God, his country, his family and his class. ” (418 US 264, 268 [emphasis supplied].)

. Although it was not emphasized in the briefs or at argument, plaintiff also contends that the statement "she is a known failure” is an assertion of fact, not an opinion. Our comments concerning the verbal and broader social context of the communication apply equally, of course, to this contention. Moreover, the bald statement that someone is a "failure”, standing alone and removed from any context, would, we believe — even more than an assertion that a person lacks "talent, ambition, and initiative” — be understood as opinion.