■ KENNETT LOVE, Appellant-Respondent, v JONATHAN KWITNY et al., Respondents-Appellants, and DIANE ABRAMS et al., Respondents.—In an action to recover damages for defamation, the plaintiff appeals from (1) so much of an order of

the Supreme Court, Suffolk County (McCarthy, J.), dated January 19, 1989, as granted the cross motion of the defendant Diane Abrams to dismiss the complaint insofar as it is asserted against her for lack of personal jurisdiction, and (2) so much of an order and judgment (one paper) of the same court entered March 14, 1990, as granted the motion of the defendants Jonathan Kwitny, Don Lynn, and Don Lynn Productions for summary judgment dismissing the complaint against them, and, upon searching the record, dismissed the complaint against all the defendants, and the defendants Jonathan Kwitny, Don Lynn, and Don Lynn Productions cross-appeal from so much of the same order and judgment as dismissed their counterclaim pursuant to CPLR 8303-a against the plaintiff.

Ordered that the appeal from the order is dismissed, without costs or disbursements; and it is further,

Ordered that the order and judgment is affirmed, without costs or disbursements.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see, Matter of Aho, 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the order and judgment (see, CPLR 5501 [a] [1]).

On January 27, 1987, the defendant Jonathan Kwitny appeared on a cable television program called the Diane Abrams Show, which was hosted by the defendant Diane Abrams, and produced by the defendants Don Lynn and Don Lynn Productions. The show was broadcast on May 22, 1987, by the defendant Paragon Cable Manhattan, which is owned by the defendant ARP Cable, Inc. During Abrams's interview of Kwitny, the following colloquy occurred:

"ABRAMS: Well, actually your real field of expertise is foreign policy, if I am not mistaken * * *

"ABRAMS: And I know you wrote this great book, ENDLESS ENEMIES * * *

"ABRAMS: Is that sort of your major book to-date, would you say? * * *

"KWITNY: Well, it certainly caused more trouble than the others * * * Just this month, Judge Owen, that fine and distinguished jurist, threw out the libel counts—the libel charges—that have suppressed the book for two years * * *

"ABRAMS: Who was it that brought the libel charges?

"KWITNY: A guy named Kennett Love, a former reporter for

*The New York Times,* who, in covering, in 1953, for the *Times* the coup that overthrew the only democratically elected government that Iran has ever had and installed the Shah, *took part in that coup along with the C.I.A. and State Department people that he knew were running that coup, and yet withheld that information from readers of the New York Times, making it sound—following the Government line—that this was a popular uprising for the beloved Shah.* Well, it's this kind of thing that has led to what we have now."

Shortly before Kwitny appeared on the Diane Abrams Show, United States District Court Judge Richard Owen had summarily dismissed certain libel causes of action interposed against Kwitny by the plaintiff in the United States District Court for the Southern District of New York. After Kwitny's appearance on the show, the plaintiff commenced the instant action in the Supreme Court, Suffolk County, averring that Kwitny's remarks defamed his reputation as a journalist.

The parties agree that the applicable standard of review is that enunciated by the Court of Appeals in *Chapadeau v Utica Observer-Dispatch* (38 NY2d 196, 199): "[W]here the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the party defamed may recover; however, to warrant such recovery he must establish, by a preponderance of the evidence, that the publisher *acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties"* (emphasis added).

Clearly, the 1953 coup in Iran and the American involvement in that coup are "within the sphere of legitimate public concern". The question, then, is whether Kwitny "acted in a grossly irresponsible manner" in saying, on the Diane Abrams Show, that while the plaintiff was reporting for the New York Times in 1953 on the coup to overthrow the government of Premier Mossadegh of Iran, he (1) took an active part in the coup (2) knew that personnel of the Central Intelligence Agency and the Department of State were "running that coup [but] withheld that information from readers of the *New York Times"* and (3) "follow[ed] the Government line" by representing that the coup was a "popular uprising for the beloved Shah".

In writing his book Endless Enemies, Kwitny relied on an unpublished paper which had been written by the plaintiff in 1960 for a graduate course at Princeton University in which the plaintiff discussed the role of the United States Govern-

ment in the overthrow of Premier Mossadegh and the restoration of the Shah in Iran in the summer of 1953. Kwitny also relied on the plaintiff's own articles in the New York Times about the coup and two articles which were published in the New York Times in 1977 and 1980, for which the plaintiff was interviewed.

A review of the plaintiff's 1960 paper reveals that the plaintiff admitted participating in the coup in Iran in 1953. The plaintiff states, "Incidentally, I, myself was responsible in an impromptu sort of way, for speeding the final victory of the royalists".

Further in that 1960 paper, the plaintiff wrote: "According to my observations at the time, operatives of the Central Intelligence Agency concerted plans for action with Maj. Gen. Fazlollah Zahedi, retired, who was to lead the coup and assume the premiership". At a later point the plaintiff wrote: "My first observation of the association of the United States with the royalist cause began with a telephone call to me at the Park Hotel from Joe Goodwin, a C.I.A. man attached to the embassy as a political officer".

In view of this language by the plaintiff, it cannot be said that Kwitny "acted in a grossly irresponsible manner" in concluding that the plaintiff took part in the coup and knew that personnel of the Central Intelligence Agency and the Department of State were "running that coup". The plaintiff does not contend that his dispatches to the New York Times, at the time, conveyed this information. Thus, Kwitny had a valid basis for reporting as he did on the plaintiff's activities. To the extent Kwitny said that the plaintiff "follow[ed] the Government line" by representing that the coup was a "popular uprising for the beloved Shah," he was expressing an opinion, which is not actionable (see, Steinhilber v Alphonse, 68 NY2d 283, 289).

This was the reasoning of Judge Owen of the United States District Court on substantially the same issues as those presented herein. The same issues may not be relitigated here.

Contrary to the contention of the plaintiff, that he instituted an earlier action against Kwitny does not lend credence to the plaintiff's contention that Kwitny acted with actual malice when he republished the allegedly defamatory statements. The case of Rinaldi v Viking Penguin (52 NY2d 422), relied upon by the plaintiff, does not require a different result. In Rinaldi, the plaintiff wrote to the initial publisher setting forth specific items of fact which he claimed were false and set

forth detailed, corroborated refutations, and insisted, *inter alia,* that there be no further printing. The publisher agreed that there had been a factual error and placed notes in a corrections file to be utilized in any subsequent printing. However, when a paperback version was printed, nothing complained of as factually inaccurate had been changed. The plaintiff contended that the publisher's act in printing the paperback version established actual malice so as to defeat the publisher's motion for summary judgment. The Court of Appeals did not reach this issue, affirming the Appellate Division's ruling under CPLR 3212 (f), denying summary judgment in contemplation of discovery *(Rinaldi v Viking Penguin, supra,* at 438). In contrast, in the instant case, the plaintiff has not established the factual falsity of any of the statements attributed to him by Kwitny, since they all have their foundation in the plaintiff's own 1960 paper.

With regard to the defendants other than Kwitny, since the action in the United States District Court had already been dismissed when Kwitny appeared on the Diane Abrams Show, they had no substantial reason to question the accuracy of anything that he might have said on that show or his bona fides *(see, Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 382-383, *cert denied* 434 US 969; *Chalpin v Amordian Press,* 128 AD2d 81, 88).

Finally, dismissal of the counterclaim was proper, there being no evidence in the record that the present action was commenced or continued in bad faith *(see,* CPLR 8303-a; *Banat v Passalaqua,* 142 AD2d 706; 22 NYCRR part 130). Thompson, J. P., Sullivan, O'Brien and Santucci, JJ., concur.