**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2544
_____

NINA JANKOWICZ,
                                        Appellant

v.

FOX NEWS NETWORK, LLC; FOX CORP.


_____

On Appeal from the United States District Court
for the District of Delaware
(District Court No. 1:23-cv-00513)
District Judge: Honorable Colm F. Connolly
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on July 7, 2025

Before: RESTREPO, BIBAS, and CHUNG, *Circuit Judges*.

(Filed: September 12, 2025)
_____

OPINION*
_____

_____

   * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*

Appellant Nina Jankowicz is the former Executive Director of the Department of Homeland Security's ("DHS") Disinformation Governance Board (the "Board"). Jankowicz was a frequent subject of commentary on Fox News programs both during and after her tenure as Executive Director. Much of this commentary was negative, and Jankowicz contends that much of it was also defamatory. Accordingly, Jankowicz sued Fox News Network, LLC and Fox Corporation (collectively, "Fox"), asserting a claim for defamation *per se*.

The District Court dismissed Jankowicz's complaint, finding that the allegedly defamatory statements were not actionable because each was either: (1) not of and concerning Jankowicz; (2) opinion; or (3) substantially true. Because we agree with each of the District Court's conclusions, we will affirm.

## I. Background[1]

Jankowicz's tenure as Executive Director of the Board was brief, extending only "from March 2, 2022, through May 18, 2022." A38. The Board "had no operational capabilities" and "existed to study how other components of DHS with operational authority responded to disinformation, recommend best practices that complied with constitutional and other civil liberties, and coordinate operational DHS components' discussion of their work concerning disinformation threatening national security." A33.

---

[1] Since we write primarily for parties already familiar with this case, we include only those facts necessary to reach our conclusion. The following facts are taken from Jankowicz's complaint and assumed to be true for purposes of this opinion.

Jankowicz alleges that "immediately after DHS announced the creation of the Board in late April 2022," Fox became "obsess[ed]" with her, "ridicul[ing]" and "bullying Jankowicz day in and day out." A46–47. Fox hosts and guests also frequently attacked the Board, sometimes displaying Jankowicz's image on screen while doing so, accusing it of being a "Ministry of Truth" that was trying to "take away your free speech." A54. In response to these attacks, "DHS, Secretary Mayorkas, former officials, and even the White House Press Secretary" repeatedly sought to clarify the Board's limited operational capacity and dispel "the story Fox was telling about Jankowicz and the Board." A59. Fox, however, "continued to level the same accusations about Jankowicz and the Board." A60.

In May 2022, Fox programs repeatedly commented on a 2021 video in which Jankowicz had discussed a Twitter pilot program named "Birdwatch." Though Jankowicz asserts that her 2021 comments showed a "deep concern about allowing the government— or certain individuals—to control information," A79, Fox's hosts and guests "repeatedly stated that Jankowicz had said she wanted to edit other Twitter user[s'] posts," A81.

On May 18, 2022, in response to the backlash against the Board, "DHS officials announced that the Board was being 'paused.'" A65. Though Jankowicz had been offered "the opportunity to stay on with the agency as a policy advisor while the Board's future was under review," she elected to resign instead. *Id.* Fox programs celebrated Jankowicz's resignation, saying that she "got booted," that DHS "had to yank" her, and that a video parody posted by Jankowicz had been "so embarrassing that the Biden administration had to fire" her. A87–88.

Jankowicz sued Fox for defamation. Jankowicz's First Amended Complaint (the "FAC") detailed a litany of purportedly defamatory statements made by Fox, which she characterized as largely falling into "three categories": (1) "that Jankowicz intended to censor Americans' speech"; (2) "that Jankowicz was fired from DHS"; and (3) "that Jankowicz wanted to give verified Twitter users the power to edit others' tweets." A32. Fox moved to dismiss and the District Court granted the motion, finding that Jankowicz had failed to plead any actionable defamatory statements. Jankowicz timely appealed.

## II. Discussion[2]

Jankowicz contends that the District Court applied the wrong standard of review in its order and argues that she plausibly alleged: (1) "that Fox's statements in the Complaint were not opinions"; (2) "that statements about the Board were impliedly statements about her"; (3) "that Fox's statements were false"; (4) "that Fox's false statements were made with actual malice"; (5) that "Fox's false statements were defamation *per se*"; and (6) "that Fox's statements were actionable against Defendant-Appellee Fox Corporation." Appellant's Br. at 25–26. Because we hold that each of the purportedly defamatory

---

[2] "We exercise plenary review of a district court's order granting a motion to dismiss." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014) (citing *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). In reviewing a motion to dismiss, courts assume the complaint's "factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)). New York substantive law applies to the elements of Jankowicz's defamation claim by stipulation of the parties.

4

statements identified by Jankowicz were either not of and concerning her, were opinions, or were not false, we need not reach Jankowicz's latter three arguments.

### A. Statements Concerning the Board

To make out a claim for defamation, "a defamation plaintiff must allege that the purportedly defamatory statement was 'of and concerning' him or her, *i.e.*, that '[t]he reading public acquainted with the parties and the subject' would recognize the plaintiff as a person to whom the statement refers." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104–05 (2d Cir. 2017) (quoting *Carlucci v. Poughkeepsie Newspapers, Inc.*, 57 N.Y.2d 883, 885 (1982)). "[T]he plaintiff 'need only plead sufficient facts to make it plausible—not probable or even reasonably likely—that a reader familiar with [the plaintiff] would identify [the plaintiff] as the subject of the statements at issue.'" *Palin v. New York Times Co.*, 940 F.3d 804, 816 (2d Cir. 2019) (quoting *Elias*, 872 F.3d at 105).

Jankowicz argues that the many statements made by Fox about the Board were also of and concerning her because "Fox repeatedly used Jankowicz's photo when discussing the Board" and because "Fox often referenced the Board and Jankowicz in the same statement or the same segment." Appellant's Br. at 44.[3] But these allegations are not enough to transform criticism of the Board into statements of and concerning Jankowicz.

In *New York Times Co. v. Sullivan*, the Supreme Court sought to avoid "transmuting criticism of government, however impersonal it may seem on its face, into personal

---

[3] Fox contends that Jankowicz forfeited these arguments as to most of statements contained in the FAC. Because we hold that these arguments are meritless, we do not reach the issue of forfeiture.

criticism, and hence potential libel, of the officials of whom the government is composed." 376 U.S. 254, 292 (1964). Doing so, the Court held, would "strike[] at the very center of the constitutionally protected area of free expression." *Id.* Accordingly, when a government official sues for defamation, "[t]here must be evidence showing that the attack was read as specifically directed at the plaintiff." *Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966).

Jankowicz's position—that criticism of government is transformed into actionable defamation when a television program displays an image of a government official or references a government official's name in the same segment—is precisely the sort of attack on core free expression rights that *Sullivan* sought to avoid. Nor does merely referencing an official in the same segment that a critique of government is made—nor using an official's photo as "a visual placeholder," A48, in that segment—show that an "attack was read as specifically directed at the plaintiff," *Rosenblatt*, 383 U.S. at 81.

Accordingly, the District Court did not err in finding that the statements about the Board were not of and concerning Jankowicz.

*B. Statements Concerning Jankowicz*

Next, we turn to the statements that the District Court found were specifically directed at Jankowicz to determine whether any statement was actionable as defamation. Jankowicz contends that the District Court erred in concluding that the "three categories of statements identified in the [FAC]" were non-actionable. Appellant's Br. at 31. We disagree.

Because only a false statement can be defamatory, a statement cannot be actionable if it is "substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d

6

236, 242 (2d Cir. 2017). And because "only 'facts' are capable of being proven false," only statements conveying facts, not opinions, can give rise to a defamation claim. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993). In determining whether a statement is mere opinion, New York law looks to:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to 'signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.'

*Id*. (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986)). The District Court did not err in concluding that each of the three categories of statements identified as defamatory by Jankowicz was either opinion or was substantially true. Those categories are: (1) "that Jankowicz intended to censor Americans' speech"; (2) "that Jankowicz was fired from DHS"; and (3) "that Jankowicz wanted to give verified Twitter users the power to edit others' tweets." A32.

### a. Censorship Statements

In her briefing, Jankowicz identifies three categories of statements about "Jankowicz and the Board's authority, intentions, and the fabricated threat they posed to Americans' free speech" that she asserts are actionable: (1) "claims about how Jankowicz would 'censor' Americans"; (2) "claims about how Jankowicz would 'surveil' Americans"; and

7

(3) "claims about how Jankowicz would physically harm or imprison Americans." Appellant's Br. at 31–33.

As an initial matter, many of the statements Jankowicz references were directed at the Board and were not of and concerning her, as discussed *supra*.[4] The vast majority of the remaining statements were speculation and conjecture about Jankowicz's motives, goals, and future actions, of which the truth or falsity were not readily verifiable.[5] *See Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 255 (1991) ("[P]resumptions and predictions as to what 'appeared to be' or 'might well be' or 'could well happen' or 'should be' would not have been viewed by the average reader . . . as conveying actual facts about plaintiff.").[6]

---

[4] For example, Jankowicz alleged that Fox called the Board "this bureau that's going to spy and target Americans[,]" A52, and accused it of "controlling what you say[,]" A60.

[5] For example, Jankowicz took issue with a statement that "DHS was planning a bigger censorship campaign push" where Jankowicz "[was] going to coordinate with Twitter . . . to basically censor things." A72.

[6] In her briefing, Jankowicz seizes on a single prospective-facing statement found to be potentially actionable in *Immuno AG*: an implication "that plaintiff will release possible carrier-chimpanzees who may endanger the wild population." 77 N.Y.2d at 246. Critically, though, the "plaintiff's plans" in *Immuno AG* were deemed "verifiable." *Id.* Accordingly, the alleged misstatement was "capable of being proven false[.]" *Gross*, 82 N.Y.2d at 153. The same is not true here. Jankowicz and other DHS officials' public denials of plans to encroach on free speech did not suffice to make Jankowicz's future intentions and actions ascertainable and verifiable. Hence, defendants' statements were not "capable of being proven false[.]" *Id.*

Much of this speculation was interlaced with hyperbole, which "is simply not actionable," making it more evidently opinion.[7] *Gross*, 82 N.Y.2d at 152.

The few non-speculative statements identified in the complaint concerning Jankowicz's authority and opposition to free speech were likewise opinion. Many were hyperbolic descriptions of Jankowicz's job description, such as a statement painting her as "our new disinformation minister," that conveyed mere opinion regarding the perceived dangers of her role. A61–62. The rest described her current activities as Executive Director, where she was generally described as "censoring" Americans, A74, and having "thought control[,]" A62, over public discourse. Once again, these statements used hyperbolic language and politically-charged words like "censorship" that, in context, lacked a precise, readily-understood, and falsifiable meaning. As the District Court correctly noted, while "censorship" can encompass "the actual removal of text or video from the public realm[,]" it "can also be understood to encompass efforts to restrain or suppress certain kinds of speech." A11–12. Such an amorphous political accusation cannot be assessed as true or false until the term is given a more precise meaning and thus, these statements lack the precision to give rise to a defamation claim. Without a precise and falsifiable meaning, these statements cannot be actionable.

Lastly, the broader social context and surrounding circumstances of these statements would also have signaled to viewers that the statements were opinion and not fact. *Gross*,

---

[7] For example, Jankowicz alleges that a Fox host speculated that she "will be the czar of information with this presidency" who "will be telling you what's true and what's not— maybe you'll go to jail." A55.

82 N.Y.2d at 153. The Board was, as fairly characterized by the District Court, "a hypercharged subject of political debate," and the challenged statements were made in a political commentary context. A14. "[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole.'" *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 294 (1986) (quoting *Info. Control Corp. v. Genesis One Comput. Corp.*, 611 F.2d 781, 784 (9th Cir. 1980)). That the challenged statements were made in a public discussion of a hot-button political issue only further indicates that they were opinion in nature.

Because the challenged statements were opinion, the District Court did not err in concluding that Jankowicz's first category of statements—"that Jankowicz intended to censor Americans' speech"—was not actionable. A32.

### b. Firing Statements

Jankowicz next argues that the District Court erred in concluding that the challenged statements about her departure from DHS were not actionable. Jankowicz contends that the District Court made an "improper factual finding" in concluding that "being fired and resigning was a distinction without a difference." Appellant's Br. at 51. We disagree.

Jankowicz splits hairs regarding Fox's description of her departure from DHS. By her own description, the Board was "paused"—thereby eliminating her position as Executive Director—and she was offered "the opportunity to stay on with [DHS] as a policy advisor while the Board's future was under review." A65. She chose instead to resign. Fox's

10

description of this sequence of events as Jankowicz being fired, "booted" and "yank[ed]" is substantially true. A87–88.

Despite any "[m]inor inaccuracies[,]" a statement is still substantially true "so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (cleaned up). Here, Jankowicz had been forced out of her position as Executive Director and instead offered an unspecified and temporary policy advisor position, which she declined. There was no error in the District Court's determination that this turbulent departure from DHS had the same gist and sting as a firing. Therefore, Fox's statements were substantially true.

### c. Birdwatch Statements

Lastly, Jankowicz challenges the District Court's determination that the third category of purportedly defamatory statements identified in her complaint—"that Jankowicz wanted to give verified Twitter users the power to edit others' tweets"—was not actionable. A32. Jankowicz argues that the District Court "rested on improper factual findings about the meaning of Jankowicz's selectively-quoted remarks" in reaching this conclusion. Appellant's Br. at 51.

In her complaint, Jankowicz quotes an interview in which she discussed a proposed Twitter feature named Birdwatch which, by her own words, would let "verified people . . . essentially start to 'edit' Twitter, the same sort of way that Wikipedia is, so they can add context to certain tweets." A77. She described this feature as "interesting to [her,]" and said "I like that. I like the idea of adding more context to claims and tweets and other content online, rather than removing it." A78. Jankowicz also said, however, that "we're

11

going to have problems scaling it up, and it's not a solution that works for everything" and concluded that "I'm not sure it's the solution." *Id.*

Jankowicz contends that this was not an endorsement of the feature, and that she merely "said 'I like that' about adding context to tweets." Appellant's Br. at 51. But by her own description, the mechanism by which users would "add context to certain tweets" was by "'edit[ing]' Twitter, the same sort of way that Wikipedia is." A77. The District Court did not need to engage in any "improper factual findings" to conclude that this statement was at least a partial endorsement of the proposed feature. Appellant's Br. at 51.

Because Jankowicz expressed appreciation for the Birdwatch feature—even though she noted it was not a global solution to Twitter's problems—it was substantially true to say she had "pitched" it and that the feature was "her fix." A82. The "substance" and "gist" of these statements was that Jankowicz had expressed her approval of the feature, which is exactly what she had done. *Masson*, 501 U.S. at 517. Accordingly, the District Court did not err in concluding that these statements were not actionable.

## III.  Conclusion

For the reasons set forth above, we will affirm.