■ STEPHEN M. DeFILIPPO, JR., Appellant-Respondent, v XE-ROX CORPORATION, Respondent-Appellant. [636 NYS2d 463] —Peters, J. Cross appeals from an order of the Supreme Court (Mycek, J.), entered January 24, 1995 in Saratoga County, which partially granted defendant's motion to dismiss the amended complaint.

Plaintiff was employed by defendant as a sales representative from 1981 to 1993 progressing, during such time, from a marketing trainee to an account marketing executive. Plaintiff was not employed pursuant to the terms of a written employment contract and was thus an "at-will" employee.

From 1983 through 1987, it is uncontested that plaintiff's sales performance was satisfactory. However, when his immediate supervisor was changed in 1987, plaintiff contended that he was mistreated by him and, as a result of the restructuring of his sales territories and a reassignment of his customers, his performance began to falter. He thus instituted an internal grievance against him pursuant to defendant's "Open Door" policy.* Plaintiff contends that such action triggered further mistreatment and a warning by the supervisor that if the policy was pursued, his treatment would worsen. Nonetheless, plaintiff pursued the "Open Door" policy and, notwithstanding the appointment of a new supervisor in 1989 and the completion of "Open Door" review, maintained that the mistreatment continued.

In 1990, plaintiff received counseling and ultimately a formal warning resulting in his placement on probation. During this period, he again sought, and defendant convened, a second "Open Door" review. According to defendant, despite plaintiff's continued poor performance, he was offered in March 1991 the opportunity for reassignment and transfer. Plaintiff declined the offer.

In the spring of 1993, after receiving "below expectation" performance appraisals for both 1991 and 1992, plaintiff was

---

* The "Open Door" policy was established by defendant to provide redress for employees in "situations where employees feel established company policies and practices have been violated or have not been consistently applied, or [in] other matters of serious concern to employees". It further provided a framework for investigations, response times and the proper form of responses to complaints.

placed on medical leave for a psychological evaluation. Plaintiff concedes that when he was told of the reason for the leave, his reaction was as follows: "I somewhat theatrically expressed that I knew that [defendant] was trying to harass me, or cause me to have a nervous breakdown or to do something stupid and unethical. I then stated that I would not be pushed to the point that I would go into a post office or McDonald's and shoot someone because that was contrary to my character and religious beliefs." Defendant's physician sent the evaluating psychologist a letter dated April 22, 1993 which indicated that the evaluation was sought out of concern for the health and safety of plaintiff and that of his co-workers.

Plaintiff was thereafter found fit for employment yet, when he returned from medical leave, he was allegedly placed on probation because of chronic poor performance. Plaintiff was notified that he could be subject to discipline, including termination, if his performance did not improve. Continuing to pursue the "Open Door" policy, plaintiff was directed to attend a meeting on July 27, 1993 wherein he was suspended with pay. Plaintiff avers that prior to such meeting, "management cleared the area of the building where the meeting was going to take place * * * [and informed] other personnel in the area of the * * * meeting * * * that 'I had gone off the deep end' and 'might harm someone' ". Plaintiff was later informed that his co-employees had been told that he "stalked" his immediate supervisors and that during his suspension, defendant placed a recorded message on his telephone which stated that he had "left the company" and was "no longer available until further notice".

Plaintiff was terminated on September 20, 1993. He thereafter commenced this action alleging breach of contract, negligence, interference with his profession, defamation, conspiracy, prima facie tort and intentional infliction of emotional harm. Pursuant to CPLR 3211 (a) (5) and (7), defendant moved to dismiss the complaint. Supreme Court partially granted the motion by dismissing all causes of action except those alleging defamation. It opined that "[t]here are sufficient allegations, however unspecified, that the spoken and written words of the defendant's officers, agents, and employees were both untrue and motivated by malice". The court therefore deferred any decision on that portion of the motion until the completion of discovery.

Viewing, as we must, the operative facts in a light most favorable to plaintiff (*see, Weiner v McGraw-Hill, Inc.*, 57 NY2d 458, 460; *Quail Ridge Assocs. v Chemical Bank*, 162 AD2d 917,

918, *lv dismissed* 76 NY2d 936), we find that Supreme Court properly dismissed the intentional infliction of emotional distress cause of action. Pursuant to *Murphy v American Home Prods. Corp.* (58 NY2d 293, 303, quoting Restatement [Second] of Torts § 46 [1], comment *d*), " '[l]iability [may be] found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' " (*see, Howell v New York Post Co.*, 81 NY2d 115). Applying such standard to the facts alleged not only in the complaint but also in plaintiff's affidavit, we do not find that plaintiff has alleged sufficient facts, even if true, to constitute a viable claim.

Plaintiff's cause of action is grounded upon specific statements made by his supervisor during the course of one meeting in 1987. While we have reviewed the alleged comments and do not condone their use, they do not rise to the level of extreme or outrageous conduct deemed necessary to be actionable by the *Murphy* standard. As to the further course of conduct alleged by plaintiff to support his claim that he was "tortuously and slowly" discharged over a seven-year period, we find the gravamen of such allegations more closely resembling a claim alleging the wrongful discharge of an at-will employee, a cause of action not recognized in New York (*see, Sabetay v Sterling Drug*, 69 NY2d 329). Plaintiff's attempt to have us fashion a new exception to the well-established rule permitting an employer to discharge an at-will employee at any time and for whatever reason (*see, Ingle v Glamore Motor Sales*, 73 NY2d 183; *Sabetay v Sterling Drug, supra*) due to the duties and responsibilities imposed upon him as a sales professional (*cf., Wieder v Skala*, 80 NY2d 628; *Weiner v McGraw-Hill, Inc.*, 57 NY2d 458, *supra*) is similarly rejected as without merit.

Further lacking in merit is plaintiff's allegations of an interference with his profession, whether it be couched in terms of a tortious interference with contract (*see, Kosson v "Algaze"*, 203 AD2d 112, 113, *affd* 84 NY2d 1019) or in terms of a tortious interference with a prospective economic advantage (*see, Alexander & Alexander v Fritzen*, 68 NY2d 968, 969). Similarly unavailing are these causes of action purporting to allege a claim for conspiracy (*see, supra*) or prima facie tort (*see, Curiano v Suozzi*, 63 NY2d 113, 118), since we have found, in similar circumstances, that the alleged acts are too closely related to what amounts to no more than a wrongful discharge claim (*see, Brooks v Blue Cross*, 190 AD2d 894, 895). Accord-

ingly, we find Supreme Court to have properly dismissed these various causes of action.

As to the remaining causes of action alleging defamation, we find that Supreme Court properly found plaintiff's allegations to be sufficiently specific to satisfy the requirements of CPLR 3016 (a). Yet, other than plaintiff's sixth cause of action wherein he alleges that defendant had told his co-employees that he had "stalked" his immediate supervisors (*see, Liberman v Gelstein*, 80 NY2d 429, 435-436), which if true would constitute the crime of harassment in the first degree, a class B misdemeanor (Penal Law § 240.25), we do not find the remaining statements, even if true, to be defamatory as a matter of law. We note that were the allegations of "stalking" made prior to November 1992, we would be compelled to find such statement not defamatory (*see, Liberman v Gelstein, supra*). However, in light of the "heightened level of consciousness over the sinister effects of one person stalking another, the Legislature set about in 1992 to create a series of crimes sounding in harassment and menacing to deal with the problem" (Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 240.25, 1996 Pocket Part, at 81). Thus, we dismiss the remaining causes of action alleging defamation and find no basis for defendant's application for sanctions (*cf., Mitchell v Herald Co.*, 137 AD2d 213, 217-219, *appeal dismissed* 72 NY2d 952).

Mikoll, J. P. and Yesawich Jr., JJ., concur.

Casey, J. (concurring in part and dissenting in part). Our disagreement with the majority concerns only the defamation cause of action sustained by the majority. It is our view that the alleged use of the word "stalked" does not give rise to a slander cause of action without an allegation of special damages. Not every imputation of unlawful behavior is slanderous per se; only statements regarding serious offenses are actionable without proof of damage (*see, Liberman v Gelstein*, 80 NY2d 429, 435). Assuming that the term "stalked" would not have been construed by listeners as rhetorical hyperbole, it is our view that the term is too ambiguous to attribute the commission of a serious crime. The Penal Law does not define stalking as a crime and does not use the word stalk or any of its derivatives to define a crime. Assuming that harassment in the first degree is a serious crime for the purposes of determining whether a complaint alleges slander per se, we cannot agree with the majority's conclusion that the mere use of the term "stalked" imputes the commission of that crime. The term "stalked" implies that plaintiff followed those he was stalking.

If he repeatedly did so in public places, he committed the offense of harassment in the second degree (Penal Law § 240.26 [2]), which is not a serious crime (*Liberman v Gelstein, supra*, at 436). Harassment in the first degree requires as an additional element that the victim be placed "in reasonable fear of physical injury" (Penal Law § 245.25), which no listener could reasonably infer merely from the statement that plaintiff "stalked" his immediate supervisors. Accordingly, we would dismiss the entire complaint.

Mercure, J., concurs. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted the motion to dismiss the sixth cause of action alleging defamation and denied the motion to dismiss the third, fourth and fifth causes of action alleging defamation; motion denied regarding the sixth cause of action and granted regarding the third, fourth and fifth causes of action; and, as so modified, affirmed.