■ In the Matter of SHARON LaDUKE, Appellant, v HEPBURN MEDICAL CENTER, Also Known as A. BARTON HEPBURN HOSPITAL, et al., Respondents. [657 NYS2d 810] —Spain, J. Appeal from

a judgment of the Supreme Court (Demarest, J.), entered June 28, 1996 in St. Lawrence County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Hepburn Medical Center terminating petitioner's employment.

In 1977 petitioner started working at respondent Hepburn Medical Center (hereinafter the hospital) in the City of Ogdensburg, St. Lawrence County, as a billing clerk. She accepted a nursing position at the hospital in 1981 after completing her nursing education. Each of these positions were covered by collective bargaining agreements. In 1989 she was promoted to the position of Nurse Manager of the critical care unit (hereinafter CCU), a management position not covered by a written agreement or a specified term. In 1991 the hospital adopted a "Policy and Procedure" regarding dismissal of employees which provided that no employee would be terminated without cause regardless of whether they were covered by a collective bargaining agreement. The hospital also published an Employee Handbook[1] (hereinafter the handbook) containing a policy for minor offenses covering all employees which encourages employees to discuss events or problems with the hospital administration in "the strictest confidence" and "without fear of reprisal". However, the handbook does not contain any procedures for serious violations by employees not covered by a collective bargaining agreement; it also warns employees that a first offense, if serious, could result in dismissal. Notably, the handbook explicitly states that it is not intended as an employment contract but rather as a set of guidelines which are subject to change by the hospital from time to time.

In December 1994, a 76-year-old terminally ill woman was admitted to the CCU with acute respiratory failure. She suffered from end-stage chronic obstructive pulmonary disease and had pneumonia which required intubation and mechanical ventilation. On January 10, 1995, after discussions with her family, the life support measures were discontinued and a terminal weaning process was begun according to her doctor's orders. When the patient's doctor arrived during the morning of January 11, 1995 he found her to be uncomfortable and restless; he ordered the continuation of a Fentanyl intravenous drip. He also ordered injections of Fentanyl every 30 minutes, as needed, if she was agitated or restless. Fentanyl is a narcotic which serves as both a sedative and a pain reliever and can therefore depress respiration and, for a patient near death,

---

1. The Employee Handbook petitioner submitted in support of her petition was issued in October 1993.

could hasten death. The nursing notes indicate that petitioner administered Fentanyl only 15 minutes after the last injection, instead of 30 minutes as the doctor ordered; the patient died five minutes later. The hospital administrators investigated the incident. They were concerned about the absence of a do-not-resuscitate order in the chart as well as whether petitioner had euthanized the patient. During the investigation petitioner was advised that she could consult an attorney before speaking with the hospital's representatives and warned that she could be subject to employment, licensure and criminal sanctions. Nonetheless, petitioner agreed to answer questions without the assistance of counsel. The hospital ultimately concluded that petitioner had euthanized the patient and terminated her employment on August 4, 1995, having previously placed her on administrative leave.

Although petitioner disputes that she intentionally euthanized the patient, respondents found that she admitted to others that she had done so. Respondents also relied upon the evidence that petitioner administered Fentanyl only 15 minutes after a previous injection of the narcotic and that she had not noted in the chart any agitation or restlessness, which good nursing practice demanded. The investigation also revealed that petitioner had administered the final dosage by increasing the intravenous drip rate rather than using a syringe in violation of hospital procedure, making it impossible for respondents to determine how much medication petitioner had administered.

Petitioner admits that she related to several people that, because of the lack of procedures and guidelines, and the family's distress surrounding the patient's death, she may have inadvertently euthanized the patient by simply following the doctor's orders. She asserts, *inter alia*, that her manner of administering the last dose of medication comported with good nursing practice, as confirmed by the State Nursing Association; that she documented the amount of medication that she administered; that an outside nurse peer review obtained by the hospital did not find anything wrong with the nursing care provided to the patient;[2] and that there was no evidence that the last dose of Fentanyl which she administered actually hastened the patient's death. After petitioner retained counsel, the hospital offered her the opportunity to resign, which she declined. Following her termination, petitioner instituted this proceeding pursuant to CPLR article 78 seeking, *inter alia*, a

---

2. Respondents contend that the peer review panel did not have petitioner's admissions when it reached its conclusions.

judgment directing her reinstatement to her position with full back pay. Supreme Court dismissed the proceeding and petitioner appeals.

We affirm, rejecting petitioner's contention that under the "totality of circumstances" standard she established that she was not an at-will employee and could not be fired without just cause (*see, Matter of Hanchard v Facilities Dev. Corp.*, 85 NY2d 638; *Weiner v McGraw-Hill, Inc.*, 57 NY2d 458; *Diskin v Consolidated Edison Co.*, 135 AD2d 775, *lv denied* 72 NY2d 802). In our view, Supreme Court correctly concluded that petitioner had not overcome the presumption that she was an at-will employee. It is well settled that absent an express agreement which establishes that employment is for a fixed duration, an employment relationship is presumed to be at will and can be freely terminated by either party at any time, for any reason or for no reason (*see, Matter of De Petris v Union Settlement Assn.*, 86 NY2d 406, 410; *Murphy v American Home Prods. Corp.*, 58 NY2d 293, 300-301; *Kelley v New York State Martin Luther King, Jr. Commn. & Inst. for Nonviolence*, 229 AD2d 629; *DeFilippo v Xerox Corp.*, 223 AD2d 846, *lv dismissed* 87 NY2d 1056). The right to terminate employment remains unimpaired absent a constitutionally impermissible purpose, a statutory proscription or an express limitation in an employment contract (*see, e.g., Sabetay v Sterling Drug*, 69 NY2d 329, 337).

The presumption of at-will employment may be rebutted if it is established that the employee was made aware of a written policy limiting the employer's right to discharge at the time the employment commenced, and the employee detrimentally relied upon the termination for cause policy in accepting employment (*see, Matter of De Petris v Union Settlement Assn., supra*, at 410; *Matter of Hanchard v Facilities Dev. Corp., supra*; *Weiner v McGraw-Hill, Inc., supra*, at 465-466; *Murchison v Community Counseling & Mediation Servs.*, 228 AD2d 657, 658). However, an employee who attempts to demonstrate a limitation on an employer's right to discharge at will faces an "explicit and difficult pleading burden" (*Sabetay v Sterling Drug, supra*, at 334-335; *see, Fieldhouse v Stamford Hosp. Socy.*, 233 AD2d 540, 541). Only an express limitation which is reasonably relied upon will create a limitation on at-will employment.

Since the 1991 dismissal policy had not been issued at the time petitioner accepted the position in question, Supreme Court correctly rejected her claim of detrimental reliance in accepting her position. Moreover, she submitted no documen-

tary evidence to support her assertion that she declined actual offers of other employment in reliance on said policy, rendering her assertion to be conclusory and self-serving. Additionally, any reliance on the contents of the handbook cannot be determinative, particularly where, as here, it clearly stated that it was not an employment contract but merely a set of guidelines which could be changed by the hospital (*see, Matter of De Petris v Union Settlement Assn., supra,* at 410; *Rich v CooperVision, Inc.,* 198 AD2d 860; *Fisher-Jackson v La Guardia Hosp.,* 187 AD2d 696, 697). As to petitioner's long and alleged unblemished record, the quality and length of an employee's service are not relevant factors in determining whether the presumption of at-will employment has been overcome. Nor can a limitation on an employer's right to terminate an at-will employee be inferred from an employer's utilization of an internal grievance procedure (*see, Matter of Fiammetta v St. Francis Hosp.,* 168 AD2d 556, 557). Accordingly, Supreme Court's conclusion that petitioner had not overcome the presumption that she was an at-will employee will not be disturbed.

We also reject petitioner's contention that respondents should be estopped from relying on the at-will doctrine or should be deemed to have waived that defense because the hospital investigated the incident and gave her a reason for her termination. Utilization of an internal grievance procedure before terminating an employee for cause does not preclude an employer's reliance upon the at-will doctrine (*see, id.*). Moreover, employers, especially hospitals, have an obligation to conduct investigations into serious incidents such as occurred here for many reasons other than to make a determination as to whether to terminate an employee. If such conduct by respondents were to be interpreted to either waive the at-will defense or to estop them from raising that defense, the at-will defense would be substantially and inappropriately constrained. While it is understandable that petitioner's stature has been diminished as a result of the hospital's determination that she committed euthanasia, she was clearly afforded an opportunity to present her perspective during the investigation and, despite being warned, spoke freely with representatives of the hospital without the advice of counsel.

We have considered petitioner's remaining contentions and find them to be without merit.

Cardona, P. J., Mercure, White and Carpinello, JJ., concur. Ordered that the judgment is affirmed, without costs.