[658 NYS2d 502]

Hyung R. Kim, Respondent, v Ramona Dvorak et al., Appellants, et al., Defendant.

Third Department, May 22, 1997

## APPEARANCES OF COUNSEL

*McNamee, Lochner, Titus & Williams, P. C.,* Albany *(G. Kimball Williams* of counsel), for appellants.

*Ronald J. Kim,* Saratoga Springs, for respondent.

### OPINION OF THE COURT

PETERS, J.

On November 30, 1995 at Stratton Veterans Administration Medical Center (hereinafter the V.A.) in the City of Albany, plaintiff performed a compensation/pension interview and examination of defendant Earl Morrow, a World War II veteran and former prisoner of war (hereinafter POW). Morrow contends that unlike all of his previous experiences, his wife was not initially permitted to participate. During the course of the interview, due to the problems he had in answering questions regarding his medical care, he had to leave the room to

ask his wife specific information. After providing him with details about certain information that he previously had no difficulty recalling and after noticing his obviously agitated state, Morrow's wife recounts that she became quite concerned. When Morrow returned to the interview, his wife approached V.A. personnel and voiced her concern about the conduct of the interviewer and her preclusion from the interview. After an initial protest, plaintiff allowed her to be present.

Both Morrow and his wife contend that plaintiff became increasingly angry when Morrow could not recall specifics of his medical history despite the fact that his complete medical file was in front of plaintiff. Upon the assessment that the information provided was not pertinent to the questions posed, the Morrows contend that plaintiff became increasingly agitated, spoke in a very loud voice and slammed the desk with his fists.

Deeply disturbed with plaintiff's conduct, the Morrows immediately inquired of various V.A. personnel as to how they could lodge a complaint and wrote to Lawrence Flesh, the Acting Director of the V.A. Upon receiving a brief written response which simply apologized for any "misunderstandings", Morrow remained dissatisfied and wrote to Flesh again. Upon receiving no secondary response, Morrow ultimately discussed this matter with his stepdaughter, defendant Ramona Dvorak, a physician with a Master's degree in public health and a member of the faculty at Harvard Medical School.

The record reveals that Dvorak regularly participated in her parents' medical care. Offering to help once again, Dvorak requested copies of the letters that her stepfather had already written, advising that she would follow up and see whether she could get a response. Without providing copies to her parents, Dvorak wrote four separate letters, all utilizing Harvard Medical School letterhead,[1] detailing her distress with the way petitioner treated her parents. She wrote that her stepfather had sent a "vividly descriptive and poignantly personal account of [the] visit * * * [wherein] he recounts his traumatic and valiant WWII experiences of treacherous air missions, close encounters with death and destruction and of surviving as a POW". Describing Morrow as a calm man under the most

---

1. One was addressed to Flesh, another to Joe Polliciano, President of the Tri-County Council in Albany, a third to Jesse Brown, as Secretary of Veterans Affairs, along with Gerald Solomon, a member of Congress, and the last to Fred Malphurs, the Network Director for the Upstate New York Veterans Administration Health Care.

adverse conditions, Dvorak recounted her parents' experience with plaintiff and then concluded that they were "subjected to * * * a threatening dehumanizing and brutal interrogation paralleled only by the torture [Morrow] agonized at the hands of his captures [*sic*] in NAZI Germany". Contending that plaintiff's treatment of her father was "deplorable", exemplifying "arrogant rudeness, belligerence and reproachful condemnation", she opined that, "[a]t the very least, he should not be practicing in any capacity in this institution or with POWs who may well be particularly vulnerable to these types of cruel and combative tactics".

Dvorak further noted that she teaches the course on the doctor-patient relationship at Harvard Medical School where medical students learn that the relationship between the provider and the patient is paramount. She contended that if plaintiff could not adequately elicit the required information from Morrow, he should have sought different means other than "browbeating" or the use of "emotional and physical intimidation". Dvorak typically ended these letters seeking a more adequate response and a further investigation into the matter, with all correspondence to be sent to her home address in Brookline, Massachusetts.

After plaintiff received copies of these letters, he commenced this action for libel, slander, intentional interference with contractual relationship, intentional infliction of emotional distress and interference with prospective economic advantage. Morrow and Dvorak (hereinafter collectively referred to as defendants) moved for dismissal of the complaint due to its insufficiency and for want of personal jurisdiction or, in the alternative, for summary judgment. They further sought sanctions pursuant to CPLR 8303-a. Supreme Court found personal jurisdiction over Dvorak[2] and triable issues of fact on the defamation causes of action. While a dismissal of the cause of action pleading interference with contractual relationship was granted, the causes of action alleging an interference with prospective economic advantage and intentional infliction of emotional distress remained. Supreme Court also denied defendants' motion for sanctions. Defendants now appeal.

Since the gravamen of this complaint is premised upon acts of Dvorak, we first address whether New York courts may exercise personal jurisdiction over this long-time Massachusetts

---

2. The complaint was dismissed as to defendant Harvard Medical School and to Dvorak as an agent thereof.

resident. While Dvorak contended that she derives no income from services performed in New York, transacts no business here and notes that all of the activities complained of took place in Massachusetts, Supreme Court determined that she "engaged in a systematic course of doing business by acting as an advocate for [Morrow], who was and still is seeking patient care through the State's V.A. system". Finding a nexus between Dvorak's oral and written communications and the defamation alleged by plaintiff, it determined that the jurisdictional requisites were met. We disagree.

Similar to *Talbot v Johnson Newspaper Corp.* (123 AD2d 147, 149, *affd* 71 NY2d 827), "this is one of the rare tort cases in which personal jurisdiction is asserted under CPLR 302 (a) (1); ordinarily, such jurisdiction is asserted in contract actions". One of the articulated reasons for excluding defamation claims pursuant to such section was an intent to " 'avoid unnecessary inhibitions on freedom of speech or the press. These important civil liberties are entitled to special protections lest procedural burdens shackle them' " (*Legros v Irving*, 38 AD2d 53, 55, *appeal dismissed* 30 NY2d 653, quoting 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 302.11). Unlike Supreme Court, we find that plaintiff has failed to allege sufficient evidence demonstrating that Dvorak engaged in any form of " 'purposeful [business] activities' " (*Talbot v Johnson Newspaper Corp.*, 71 NY2d 827, 829, *supra,* quoting *McGowan v Smith*, 52 NY2d 268, 272) within this State to justify subjecting her to personal jurisdiction in our courts.

Notwithstanding the use of Harvard Medical School stationery,[3] Dvorak's correspondence clearly expressed her personal dissatisfaction with the health care rendered to Morrow based upon the information that her parents supplied to her. To contend that her pursuit of such complaints through professional organizations or support groups would constitute a transaction of business would, in our opinion, unjustifiably extend the intendment of the Legislature to allow, in limited circumstances, the reach of this State's jurisdiction beyond its borders (*see, Talbot v Johnson Newspaper Corp.*, 71 NY2d 827, *supra*; *McGowan v Smith, supra*; *Findlay v Duthuit*, 86 AD2d 789; *cf., Legros v Irving, supra*). We further find not a scintilla of evidence to support the existence of an agency relationship between Dvorak and Morrow (*see, Parke-Bernet Galleries v Frank-*

---

3. We also note that counsel for plaintiff similarly used his corporate stationery in his endeavor to represent plaintiff in a personal capacity.

*lyn*, 26 NY2d 13, 18), and next review whether the allegations pertaining to Morrow can withstand a motion to dismiss (*see, Vitale v Fowler Oil Co.*, — AD2d —, 1997 NY Slip Op 03701 [3d Dept, Apr. 17, 1997]).

It is well settled that "expressions of an opinion 'false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions' " (*Steinhilber v Alphonse*, 68 NY2d 283, 286, quoting *Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 380, *cert denied* 434 US 969). Noting the distinction between a factual assertion underlying a properly instituted action for defamation and nonactionable opinion (*see, Steinhilber v Alphonse, supra*, at 290; *Rabushka v Marks*, 229 AD2d 899), a question of law for the court to decide (*see, Steinhilber v Alphonse, supra*), we find it clear, "tak[ing] into consideration the larger context in which the statements were published, including the nature of the particular forum" (*Brian v Richardson*, 87 NY2d 46, 51), that Morrow's written statements to Flesh constitute nonactionable opinion. Had we not so found, we would still deem his communications to the director of the institution where plaintiff worked to be subject to a qualified privilege (*see, Foster v Churchill*, 87 NY2d 744, 751). Even when viewing all of the evidence in a light most favorable to plaintiff, we conclude that this cause of action must be dismissed.

Further, finding no evidence or sufficient alleged facts to support a claim against Morrow for intentional infliction of emotional distress (*see, Howell v New York Post Co.*, 81 NY2d 115; *DeFilippo v Xerox Corp.*, 223 AD2d 846, *lv dismissed* 87 NY2d 1056) or for tortious interference with a prospective economic advantage (*see, Alexander & Alexander v Fritzen*, 68 NY2d 968; *DeFilippo v Xerox Corp., supra*), these causes of action must be dismissed as well.

Notwithstanding our dismissal of the remaining causes of action, we find that Supreme Court properly determined that defendants' motion for sanctions was inappropriate (*see, Vicom, Inc. v Silverwood Dev.*, 188 AD2d 1057).

Accordingly, we modify Supreme Court's order by reversing that part which found personal jurisdiction over Dvorak and sustained plaintiff's causes of action for libel, slander, intentional infliction of emotional distress and interference with prospective economic advantage.

Mikoll, J. P., Crew III, Casey and Carpinello, JJ., concur.

Ordered that the order is modified, on the law, with costs to defendants Ramona Dvorak and Earl Morrow, by reversing so

much thereof as partially denied the motion for summary judgment dismissing the complaint; said motion granted in its entirety and complaint dismissed; and, as so modified, affirmed.