(October 26, 2004)

█ VERTICAL COMPUTER SYSTEMS, INC., a Member of NOW Solutions, LLC, in Its Own Right and in the Right of NOW Solutions, LLC, Appellant, v ROSS SYSTEMS, INC., Respondent, et al., Defendants. [784 NYS2d 499]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered November 24, 2003, which, to the extent appealed from as limited by the brief, granted defendant Ross Systems, Inc.'s motion to dismiss the second, fifth, sixth and

seventh causes of action of the amended complaint, unanimously reversed, on the law, with costs and disbursements, the motion denied and the said causes of action reinstated.

In the amended complaint at issue, plaintiff Vertical Computer Systems, Inc. asserts direct claims on its own behalf and derivative claims on behalf of NOW Solutions, LLC against, among others, Ross Systems, Inc. arising out of the 2001 sale by Ross of its Human Resource-Payroll Unit Division (HR-Payroll Unit) to NOW. At all times relevant, HR-Payroll Unit's business was assembling software components into custom designed packages and providing the continuing maintenance that these packages required. There are three nonappealing defendants, Arglen Acquisitions, LLC, a member of NOW, Gary Gyselen, a principal of Arglen and NOW's chairman, and J. Patrick Tinley, president and CEO of Ross.

In 2000, Ross entered into negotiations to sell its HR-Payroll Unit to Arglen, pursuant to which Ross and Arglen entered into a letter agreement dated November 1, 2000 whereby Arglen would act as a "nonexclusive financial advisor" to Ross in connection with the sale of the HR-Payroll Unit to an investment group formed by Arglen for which, as compensation, Arglen would receive the amount by which the purchase price exceeded $5.5 million, but not more than $600,000. The payment of such compensation was contingent upon the closing of the sale by March 1, 2001. Ross also promised Arglen options in Ross common stock to be earned at the closing of the sale. Gyselen thereafter arranged for financing for the proposed transaction from Coast Business Credit, a then-current lender to Ross. The loan proposed, however, required Gyselen to find another participant to provide additional working capital and security for the Coast loan. This led Arglen and Gyselen to form NOW with, initially, one member, Arglen, through which the HR-Payroll Unit would be acquired. By the time of the February 28, 2001 closing, Vertical and Arglen had agreed that Vertical would contribute $1 million in cash as working capital, guarantee the Coast Business Credit loan and pledge an additional $1.5 million as cash collateral for that loan for which Vertical was to receive 60% of the membership interest in NOW. Arglen and NOW management would split the balance, 35% to Arglen and 5% to management. Meanwhile, in early February 2001, NOW and Arglen, its only member, entered into an agreement requiring NOW to pay all of Arglen's expenses in the HR-Payroll transaction and a finder's fee of $150,000 or 3.5% of the total transactional financing provided to NOW. Arglen failed to disclose either the February 2001 or the November 2000 letter agreement to NOW's postclosing management.

At the February 28, 2001 closing, Gyselen as chairman of NOW and defendant Tinley as chief executive officer of Ross signed the asset purchase agreement (APA) for a purchase price of $6.1 million, subject to a number of adjustments. $5.1 million was paid in cash from the Coast Business Credit loan and a $1 million purchase-money note, payable $250,000 on February 28, 2002 and the balance one year later, on February 28, 2003, given for the remainder. The most significant adjustment, contained in section 2.4 (iii) of the APA, involved fees for maintenance contract renewals continuing in effect after the closing. Ultimately, the balance due for this adjustment was determined to be in excess of $3.5 million, none of which was credited to NOW. The February 28, 2002 note payment was set off against certain adjustments due NOW under the APA. By February 28, 2003, when the final payment under the note was due, the balance of the purchase price adjustments for prepaid maintenance fees remained outstanding and NOW's management and Vertical had discovered the hidden fee arrangements benefitting Arglen and Gyselen. As a result, no payment was made.

In early 2003, as a result of Ross's failure to implement the adjustments due under the APA, a majority of NOW's executive committee favored the commencement of an action against Ross to collect these amounts. Since the NOW operating agreement required a supermajority of 75% of the members to consent to litigation, the issue was presented to a special meeting of members on February 27, 2003. Gyselen, acting for Arglen, which controlled over 30% of the membership interest, demanding veto power over the choice of counsel and a detailed preparation of claims, refused to authorize the litigation. Consequently, Vertical commenced this action, asserting seven causes of action against Ross, and additional causes of action against Tinley, Arglen and Gyselen. Only the first seven causes of action are the subject of this appeal.

The first, third and fourth causes of action seek damages for Ross's failure to disclose two side agreements between Arglen and Ross on theories of breach of a covenant to disclose, breach of warranty that all material facts had been disclosed and fraud. The second cause of action was based on Ross's alleged failure to credit NOW with closing adjustments equal to at least $3.5 million for maintenance contract fees received preclosing relating to contracts extending beyond the closing date. The fifth, sixth and seventh alleged that, based on the alleged breaches and fraud, NOW was entitled to a right of setoff against the promissory note in the amount of $750,000, indemnification and attorneys' fees.

Defendants moved to dismiss the complaint pursuant to CPLR 3211.* Supreme Court granted the motions. The court's decision on Ross's motion, the only issue on appeal, had two aspects. First, it held that the first four causes of action against Ross had "one factual allegation at their heart": that Ross failed to disclose to NOW prior to or at closing the November 2000 and February 2001 letter agreements. The court then concluded that none of the first four claims stated a cause of action because all of the complained-of acts occurred prior to Vertical's investment in NOW; at all times Gyselen was the chief executive officer of NOW; Gyselen knew of each of these side deals and, therefore, NOW was aware of all the matters that Ross is charged with failing to disclose. Supreme Court dismissed the fifth, sixth and seventh causes of action against Ross, stating that they "presume a corporate injury and seek damages therefor under various theories," and because "the complaint cannot state a viable claim for an injury by Ross, these claims against it too must be dismissed." Since Supreme Court's analysis was faulty, we reverse.

The dismissal of the three causes of action (first, third and fourth) based on NOW's ignorance of the side agreements—the November 2000 letter agreement and the Arglen option in Ross common stock, the knowledge of which the motion court imputed to NOW—is irrelevant to the viability of the second cause of action. Thus, Supreme Court erred when it dismissed, on the same ground, the second cause of action for breach of a contract requirement in the APA between NOW and Ross that Ross make certain adjustments that would reduce the purchase price of the HR-Payroll Unit. This cause of action does not depend, in any way, on a failure to disclose and is completely unrelated to the side agreements relating to compensation, as finders, for Arglen and Gyselen. This adjustment, for payments received by Ross preclosing for maintenance contracts that required services postclosing, did not depend in any way on the side agreements, which contain no reference to the maintenance fees, or NOW's knowledge of them. Indeed, the second cause of action would stand even if every reference to the side agreements and to Arglen and Gyselen was eliminated from the amended complaint. Thus, the court's dismissal of the second cause of action cannot be rationalized with the allegations in the amended complaint. Since the fifth, sixth and seventh causes sought collateral relief under the APA for offset for damages caused by Ross's breach in failing to give NOW, as alleged, $3,562.201.22 in adjustment credit, indemnity for the same and

---

* Ross and Tinley moved separately. Gyselen and Arglen proceeded jointly.

attorneys' fees, these causes of action should be reinstated. Contrary to Supreme Court's view, the second cause of action does state a corporate injury and the three related causes of action are viable.

As an alternative argument to sustain the dismissal of the first seven causes of action, Ross challenges Vertical's standing to bring a derivative action on behalf of NOW, first noting the requirement that a supermajority of 75% of its members authorize the commencement of litigation. However, Delaware law, which controls here, provides that a member of a limited liability company may bring an action in the right of such company if "members with authority to do so have refused to bring the action or if an effort to cause those . . . members to bring the action is not likely to succeed." (Del Code Ann, tit 6, § 18-1001.) Thus, the supermajority provision is not an obstacle to this action. The operating agreement's supermajority provision gives Arglen with its 35% interest no more veto power over a derivative action for the benefit of NOW than a holder of a 50% interest in a Delaware limited liability company without a supermajority provision would have to preclude a derivative action for the benefit of such a company. Furthermore, Delaware Code Annotated, title 6, § 18-1003's requirement that "[i]n a derivative action, the complaint shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a manager or member or the reasons for not making the effort" has been met. In its amended complaint, Vertical detailed the impropriety of Gyselen's refusal to give consent and the futility of any further demands.

On a procedural note, Ross argues that this appeal should be dismissed as defective and untimely. In appealing the dismissal of the first eight causes of action, Vertical annexed to its notice of appeal, which was served and filed in a timely manner, the order entered on Arglen and Gyselen's motion (sequence number 001) to dismiss the complaint, the ninth through seventeenth causes of action of which were against them, one of the three short form orders entered. These orders were nearly identical except for the motion sequence number, and all three referenced the single memorandum decision granting the three motions. The short form order on Ross's motion contained motion sequence number 002 and the statement, "Motion is decided in accordance with the memorandum decision issued in motion sequence [number] 001 o[f] this action." Vertical's notice of appeal stated that it was appealing from the subject order annexed as an exhibit "to the extent that said order dismissed the first through eighth causes of action." Also an-

nexed was the memorandum decision addressing all three motions directed to the amended complaint.

Ross's objection to the timeliness and validity of the notice of appeal is based solely on the attachment of the short form order on motion sequence number 001, rather than the short form order on motion sequence number 002. After filing its record and brief and in response to Ross's objection in a "Counter Preargument Statement," Vertical filed an amended notice of appeal, dropping its reference to the eighth cause of action and including as an exhibit the order on motion sequence number 002 with attached memorandum decision. Vested with ample discretion to treat the notice of appeal as valid (*see* CPLR 5520 [c]), we deem the notice of appeal amended in the form of the amended notice (*see e.g. Becker v Wells*, 297 NY 275 [1948]; *Hopkins v Tinghino*, 248 AD2d 794 [1998]). Ross could not have been misled by the "inaccurate description" (CPLR 5520 [c]) of the appealed from order and was in no way prejudiced. Concur—Saxe, J.P., Sullivan, Williams, Friedman and Marlow, JJ.