[874 NYS2d 52]

Doug Copp et al., Appellants, v Rayner Ramirez et al., Respondents, et al., Defendants.

First Department, February 24, 2009

### APPEARANCES OF COUNSEL

*Karasik & Associates, LLC*, New York City (*Andrew C. Miller* and *Sheldon Karasik* of counsel), for appellants.

*Julie Rikelman*, New York City, for Rayner Ramirez and others, respondents.

*Satterlee Stephens Burke & Burke LLP*, New York City (*Mark A. Fowler* and *James Regan* of counsel), for Leslie Linthicum, respondent.

*Fross Zelnick Lehrman & Zissu, P.C.*, New York City (*David A. Donahue* and *Betsy Judelson Newman* of counsel), for John Grace and another, respondents.

**OPINION OF THE COURT**

RENWICK, J.

Plaintiff Copp commenced this defamation action after his tale of courage and sacrifice at Ground Zero was called into question by eyewitnesses to his activities on the rescue site, but not before his tale convinced the September 11 Victim Compensation Fund to award him $649,000. Copp, an out-of-state plaintiff, sued out-of-state defendants Miller, Grace and Linthicum (the last of whom is a reporter for the Albuquerque Journal) for allegedly making defamatory statements in New Mexico to reporters from New York's NBC Dateline program concerning events they observed during their brief visit to Ground Zero three years earlier. Plaintiffs also sued NBC-Universal and its employees (Ramirez, Hockenberry and Phillips) involved in the Dateline report (the NBC defendants). The claims against the out-of-state defendants must be dismissed because none of them is subject to personal jurisdiction in New York with regard to statements made against Copp in New Mexico. Likewise, the appeal as to the NBC defendants must be dismissed because plaintiffs failed to properly perfect their appeal against them.

A.

Doug Copp founded and ran the American Rescue Team International (ARTI), a California corporation which purportedly engaged in missions to recover humans and human remains at disaster sites. Two days after the September 11, 2001 terrorist attacks, Copp flew to New York on a corporate jet owned by the Albuquerque Journal and piloted by the Journal's publisher. The office of a New Mexico congressman had obtained special federal clearance for the flight based upon Copp's credentials as an experienced worldwide disaster rescuer. At Ground Zero, Copp intended to use his "Copp Casualty Locator" (CCL), a special device he had invented to locate human remains.

New Mexico residents Michael L. Miller, John M. Grace and Leslie Linthicum accompanied Copp on the plane from New Mexico to Ground Zero. Miller, who owned and operated a film production company in New Mexico, reportedly accompanied Copp on this trip to explore the possibility of producing a documentary about Copp's life as a rescuer. Miller visited Ground Zero on four occasions for a total of 12 hours; he stayed in New York for about 60 hours. Grace, a freelance director of photography and a cameraman, with his principal place of busi-

ness in New Mexico, reportedly visited Ground Zero with Copp for less than four hours; he stayed in New York for no more than 36 hours. Linthicum accompanied Copp to Ground Zero as a reporter for the Albuquerque Journal; she stayed in New York about 48 hours.

During his two weeks at Ground Zero, Copp did not recover any human remains; however, he claims that his team was able to recover remains at the Staten Island landfill. He also claims that as a result of his exposure to the "toxic soup" that accumulated at Ground Zero, he sustained life-threatening injuries. The September 11 Victim Compensation Fund (9/11 Fund) awarded him $649,000 for medical expenses and lost wages.

From July 11 to 18, 2004, the Albuquerque Journal published a series of articles written by Linthicum, casting doubt on whether Copp was entitled to the $649,000 he received from the 9/11 Fund. These articles also reported that the Department of Justice had launched an investigation into the legitimacy of Copp's petition to the 9/11 Fund. Search and rescue experts around the world who were interviewed also questioned Copp's claims about his exploits.

On July 15, 2005, NBC-Universal, a New York-based corporation, broadcast on its Dateline news magazine program a story addressing the controversy that led to the Department of Justice's investigation and the questions raised by the Journal articles.[1] Miller, Grace and Linthicum were interviewed and filmed in New Mexico for the Dateline report; segments of their interviews were broadcast on Dateline. The last segment of the Dateline report addressed Copp's responses to the allegations that he had defrauded the 9/11 Fund.[2]

In June 2006, one year after the NBC report aired, Copp and ARTI commenced this action against the NBC defendants and the New Mexico defendants. In the complaint, plaintiffs aver claims of defamation, intentional infliction of emotional distress and fraud, all stemming from the alleged defamatory statements aired on Dateline. Subsequently, Supreme Court granted defendants' respective motions dismissing the complaint against them. First, the court found that plaintiffs failed to establish

---

**1.** Defendant Phillips hosted the program, defendant Hockenberry reported the story, and defendant Ramirez produced it.

**2.** It includes interviews with Copp and his physicians, including the physician who submitted a medical report to the 9/11 Fund in support of Copp's petition.

the falsity of the factual assertions upon which their cause of action for defamation is based. With respect to the causes of action for intentional infliction of emotional distress and fraud, the court found that these causes of action "are largely duplicative" of the defamation claim and improperly seek only punitive damages (2007 NY Slip Op 34404[U], *3). Furthermore, the court found that the cause of action for intentional infliction of emotional distress "does not come close to sufficiently pleading the elements of such a claim," and that the fraud cause of action "is not pled with the specificity required by CPLR 3016 (b)" (*id.*). Lastly, the court found that it had no personal jurisdiction over the out-of-state defendants Linthicum, Grace and Miller because "the events relied upon against those defendants for the alleged defamation occurred outside of New York State" (*id.*). Plaintiffs have appealed the dismissal of the action against all defendants, and we affirm.

## B.

As an initial matter, we examine the NBC defendants' argument on appeal that plaintiffs have not properly appealed the Supreme Court order concerning them. Supreme Court issued three orders in this action relevant to this appeal. The first, dated October 2, 2007, granted the joint motion of defendants Grace and Miller to dismiss the complaint against them. The second, dated three days later, granted the motion of defendant Linthicum to dismiss the complaint against her. The third, also dated October 5, 2007, granted the joint motion of the NBC defendants to dismiss the complaint against them. Supreme Court issued an opinion on October 9, 2007, explaining why it had granted the motions (*id.*). Plaintiffs filed and served a notice of appeal "from the two Short Form Orders and Opinion," dated October 2, 5, and 9, that had "dismissed the Complaint in its entirety as to all defendants." The two short form orders that plaintiffs included in their appendix were the orders granting the motions of Grace and Miller, and Linthicum; the order granting the motion of the NBC defendants was not included in the appendix.

The NBC defendants argue that plaintiffs' purported appeal from the order granting the NBC defendants' motion to dismiss must be dismissed as jurisdictionally defective because plaintiffs did not refer to that order in their notice of appeal or include a copy of the order with it. We agree with the NBC defendants and hold that the notice of appeal does not contain

an accurate description of the October 5, 2007 order dismissing the action against them. Although we have the authority in our "discretion, when the interests of justice so demand," to treat certain inaccurate notices of appeal as valid (CPLR 5520 [c]; *see Robertson v Greenstein*, 308 AD2d 381 [2003], *lv dismissed* 2 NY3d 759 [2004]; Siegel, NY Prac § 534, at 922 [4th ed]), we decline to do so under these circumstances (*see Rupp-Elmasri v Elmasri*, 8 AD3d 464 [2004]). Plaintiffs failed to include in their appendix a copy of the NBC defendants' order, a relevant and necessary document of the record, which serves as yet another ground to dismiss the appeal (CPLR 5528 [a] [5]; *Reiss v Reiss*, 280 AD2d 315 [2001]; *Kraham Realty v Rothschild*, 10 AD2d 634 [1960]; *cf. Vertical Computer Sys., Inc. v Ross Sys., Inc.*, 11 AD3d 375, 379-380 [2004]). Accordingly, the only issues properly before this Court are those dealing with out-of-state defendants Miller, Grace and Linthicum.

## C.

We next examine the argument raised by all the out-of-state defendants that New York courts may not exercise personal jurisdiction over them based upon statements they made in New Mexico with regard to plaintiffs' activities that took place in New York three years earlier. Because these defendants are not New York residents, they cannot be subject to personal jurisdiction in New York unless plaintiffs prove that New York's long-arm statute confers jurisdiction over them by reason of their contacts within the state. The burden rests on plaintiffs, as the parties asserting jurisdiction (*Bunkoff Gen. Contrs. v State Auto. Mut. Ins. Co.*, 296 AD2d 699, 700 [2002]).

Under CPLR 302 (a) (1), the provision solely at issue on this appeal, long-arm jurisdiction over a nondomiciliary exists where a defendant transacted business within the state, and the cause of action arose from that transaction. "If either prong of the statute is not met, jurisdiction cannot be conferred" (*Johnson v Ward*, 4 NY3d 516, 519 [2005]). Under the statute, "proof of one transaction in New York is sufficient to invoke jurisdiction . . . so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]). "[J]urisdiction is not justified where the relationship between the claim and transaction is too attenuated" (*Johnson*, 4 NY3d at 520).

■ Supreme Court properly determined that plaintiffs failed to make a prima facie showing of personal jurisdiction over the

out-of-state defendants. Plaintiffs contend that jurisdiction exists over these defendants because of their activities in New York during the 9/11 rescue efforts at Ground Zero. It is undisputed that defendant Linthicum's presence in New York State, as a reporter for the Albuquerque Journal, lasted no longer than 48 hours, during which she visited Ground Zero for less than four hours. With regard to Miller and Grace, Copp alleges that these defendants were his business partners and were working with him on patenting and marketing the CCL device. Furthermore, in the affidavit submitted in opposition to defendants' motion to dismiss, Copp explains that Grace and Miller traveled to New York to advance this commercial enterprise (i.e., to document Copp's use of the CCL device in order to promote it), and that they intentionally provided false information to Dateline about their experience with Copp at Ground Zero to advance their own interest.

There is no need to address the issue of whether these activities constitute transacting business in the state within the purview of CPLR 302 (a) (1).[3] Even if we were to find that these activities by defendants in New York during the Ground Zero rescue effort satisfy the requirements of transacting business in New York, plaintiffs have failed to meet the second prong of CPLR 302 (a) (1), that these activities are substantially related to the defamation claims alleged in this action. Plaintiffs claim that the defamatory statements made in New Mexico to New York reporters from the Dateline program are related to their activities in New York because the statements concern Copp's rescue efforts that defendants observed during their visit to Ground Zero three years earlier. In our view, the alleged nexus between the out-of-state statements and defendants' activities in New York is too attenuated for the purpose of long-arm jurisdiction (*see Kim v Dvorak*, 230 AD2d 286 [1997] [Massachusetts defendant who sent allegedly defamatory letters to New York complaining of parent's medical treatment here was not engaged in purposeful activity in this state]).

The facts in this case are indistinguishable from *Talbot v Johnson Newspaper Corp.* (71 NY2d 827 [1988]), where the al-

---

**3.** Indeed, this Court has doubts as to whether the out-of-state defendants' minimal contacts with New York would be sufficient proof to establish the element of transacting business within the purview of the long-arm statute. In fact, plaintiffs do not dispute defendants' assertions that during their brief visit to New York the only pertinent activities they carried out were short visits to Ground Zero for a few hours (*see Strelsin v Barrett*, 36 AD2d 923 [1971]).

legedly defamatory statements were too attenuated for the purpose of long-arm jurisdiction. There, two individual nonresidents were sued for defamation based on comments they made in California concerning events that one of them had observed in New York two years earlier. In particular, one of the defendants, a student enrolled at a New York university, had witnessed a coach at the school behaving inappropriately at a campus party. Two years after the student's graduation, her father, a California resident, sent several letters to university officials and trustees describing his daughter's account of the coach's behavior and criticizing the university's handling of the situation. The daughter, while living in California, subsequently gave a telephone interview to a local New York newspaper in which she described the events. After the newspaper published an article quoting from the daughter's telephone interview as well as her father's letters, the coach sued the former student, her father and the newspaper for defamation. The Court of Appeals ruled that the complaint against the individual defendants should be dismissed for lack of personal jurisdiction. "Even if [the daughter's] previous enrollment and attendance at a New York university satisfied the requirement of purposeful activities in New York, there was no showing that—years after termination of that relationship—there was the required nexus between the [defendants'] New York 'business' and the present cause of action" (*id.* at 829).

Here, as in *Talbot*, even though the out-of-state defendants' statements about their experience in New York were broadcast in a New York-based television program, their contacts with New York are sufficiently separated in time from their allegedly defamatory statements that the relationship between them is too attenuated. Plaintiffs' argument that *Talbot* is distinguishable because it did not involve a "commercial business deal" or statements "aimed at destroying the commercial prospects of a competitor" is unpersuasive. Even if Grace and Miller had gone to New York for profit-making purposes, since the alleged defamatory statements occurred outside New York, years after the trip, as in *Talbot*, the nexus between the alleged business transaction in New York and plaintiffs' defamation claim is too attenuated (*see also Kim v Dvorak*, 230 AD2d 286 [1997], *supra*).

▮ Moreover, even if the out-of-state defendants' contacts with New York fell within New York's long-arm statute, the exercise of such jurisdiction would violate due process. Due process is satisfied if (1) defendants had "minimum contacts" with

New York State so they could reasonably foresee defending a suit here, and (2) the prospect of defending a suit in New York State comports with "traditional notions of fair play and substantial justice" (*LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 216 [2000], quoting *International Shoe Co. v Washington*, 326 US 310, 316 [1945]). In determining the second prong of the test, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief" (*Asahi Metal Industry Co. v Superior Court of Cal., Solano Cty.*, 480 US 102, 113 [1987]), as well as "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" (*World-Wide Volkswagen Corp. v Woodson*, 444 US 286, 292 [1980]).

Even if defendants had "minimum contacts" with New York State, subjecting them to jurisdiction here would be unreasonable since they are all residents of New Mexico, they made the allegedly defamatory statements in New Mexico three years after their brief contacts with New York, and plaintiffs are not residents of New York. Moreover, since Grace, Miller and Linthicum are currently defending allegations of defamation and intentional infliction of emotional distress in federal court in New Mexico based on the same underlying facts (*see Copp v Journal Publ. Co.*, 07-CV-00651 [D NM 2007]), a New York action would not promote the interstate judicial system's shared interests in obtaining the most efficient resolution of the controversy (*cf. LaMarca*, 95 NY2d at 218-219 [New York was reasonable forum where the plaintiff was a New York resident who was injured in New York and the defendant was an out-of-state corporation with a New York distributor]).

We also reject plaintiffs' argument that Supreme Court's ruling was premature because it did not allow discovery on the "full scope" of the out-of-state defendants' contacts with New York. Plaintiffs' argument is unpreserved since they raised it for the first time on appeal (*see generally Sean M. v City of New York*, 20 AD3d 146, 149-150 [2005]). In fact, plaintiffs never argued before the court below that further discovery was required because essential jurisdictional facts were not presently known. In any event, the argument lacks any merit.

In order to obtain jurisdictional discovery pursuant to CPLR 3211 (d), plaintiffs must demonstrate the possible existence of essential jurisdictional facts that are not yet known (*Peterson v Spartan Indus.*, 33 NY2d 463, 466 [1974]). Here, it does not appear from plaintiffs' complaint or affidavits that "facts essential

to justify opposition may exist, but cannot now be stated" (*see Findlay v Duthuit*, 86 AD2d 789, 791 [1982] [where this Court found the plaintiff's opposition to the motion to dismiss to be "frivolous"]).

For the foregoing reasons, we find that there is no personal jurisdiction over Grace, Miller or Linthicum in connection with the cause of action for defamation. Moreover, because, on appeal, plaintiffs' arguments with respect to their causes of action for fraud and intentional infliction of emotional distress are not directed at Grace, Miller and Linthicum, we deem any such claims against those defendants to be abandoned (*see Matter of Pessano*, 269 App Div 337, 341 [1945], *affd* 296 NY 564 [1946]).

Accordingly, the orders of the Supreme Court, New York County (Richard F. Braun, J.), entered on or about October 2 and 5, 2007, which dismissed the complaint against defendants Grace, Miller and Linthicum, should be affirmed, with one bill of costs. Purported appeal from separate order, same court and Justice, also entered on or about October 5, 2007, affecting defendants Ramirez, Hockenberry, Phillips and NBC-Universal, should be dismissed, without costs.

FRIEDMAN, J.P., SWEENY, McGUIRE and FREEDMAN, JJ., concur.

Orders, Supreme Court, New York County, entered on or about October 2 and 5, 2007, affirmed, with one bill of costs. Purported appeal from separate order, same court, also entered on or about October 5, 2007, dismissed, without costs.